228 N.J. Super. 396 (1988)
549 A.2d 1259
ANITA RAO AND NAVEEN RAO, PLAINTIFFS-RESPONDENTS,
v.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY, DEFENDANT-APPELLANT, AND OPEN ROAD LEASING CO. INC., LENA PAGLUCCI AND JAMES PAGLUCCI, DEFENDANTS.[1]
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1988.
Decided November 4, 1988.
*397 Before Judges PRESSLER, SCALERA and STERN.
Kenneth F. Mullaney, Jr., argued the cause for appellant (Dwyer, Connell and Lisbona, attorneys, William T. Connell, on the brief).
Eugene J. McTague, Jr., argued the cause for respondents (Fischer and Kagan, attorneys, Eugene J. McTague, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
*398 In issue here is the effect to be accorded to a provision in a liability insurance policy issued to an automobile leasing company which provides automobile liability coverage to its lessees in the amount required by law but only in the event the lessee fails to maintain that coverage.
This declaratory judgment action arises from an automobile accident which occurred when Anita Rao struck Lena Paglucci, a pedestrian, while driving a car leased by her husband, Naveen Rao, from Open Road Leasing Co. Inc. Lena and her husband James filed a complaint against Anita Rao and Open Road seeking compensation for the serious personal injuries suffered by Lena.
Naveen Rao's lease agreement with Open Road required him to obtain liability insurance for the leased vehicle. Rao obtained such a policy from Allstate Insurance which provided coverage in the amount of $100,000/$300,000 and named Open Road as an "additional insured." Allstate has deposited the applicable $100,000 proceeds of this policy into court in the underlying personal injury action by the Pagluccis.
The Raos filed this suit to determine their right to coverage under the automobile liability section of the multiple coverage nationwide insurance policy issued by Universal Insurance Underwriters to Open Road. The parties brought cross-motions for summary judgment at the trial level. Universal argued against coverage because its policy specifically provided that there was no coverage for the Raos in light of their having secured insurance under the Allstate policy. The Raos asserted that the provision relied upon by Universal to escape any insurance liability to them was illegal. The trial court denied Universal's motion and granted the Raos' motion because it determined that Universal's policy contained an invalid "escape clause" and therefore the Raos are entitled to the full coverage afforded to Open Road under the Universal insurance policy.
*399 The parties agree that there is no factual dispute in this matter and that the issue is a legal one involving the interpretation of an insurance contract, rendering it appropriate for summary judgment. Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474, 479 (App.Div. 1977).
On appeal Universal argues that the trial court erred because while its policy otherwise provides a limit of $300,000 to Open Road as lessor, Rao is not entitled to even the statutory minimum $15,000/30,000 in coverage because he had procured his own liability insurance from Allstate. Universal contends that the endorsement which sets forth the limiting language in question lawfully fulfills the purpose of providing the statutory minimum coverage and therefore it should not be deemed an illegal and invalid escape clause.
The so-called "escape clause" at issue in the policy is "Endorsement 038" to the "Auto Lessors Liability" section, which provides in pertinent part:
The portion of THE MOST WE WILL PAY condition pertaining to Insuring Agreement A is replaced by:
Under Insuring Agreement A  Regardless of the number of INSUREDS or AUTOS insured by this Coverage Part, persons or organizations who sustain INJURY, claims made or suits brought, the most WE will pay for any one OCCURRENCE is the limit stated in the declarations subject to this endorsement.
The portion of the limit applicable to persons or organizations required by law to be an INSURED is only the amount (or amount in excess of any other insurance available to them) needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE takes place.
The plain import of the parenthetical clause within the third paragraph of this provision constitutes an attempt to provide liability coverage for lessees, such as the Raos, only when they fail to secure sufficient liability insurance to comply with the statutorily mandated minimum in New Jersey. Then and only then is coverage provided but only to the extent of the statutorily minimum requirements of New Jersey law. In other words, while Open Road has secured a higher amount of coverage for vehicles operated by its employees, when a car is leased, a lessee is only covered to the extent of the statutory *400 minimums and that coverage is available only when the described contingency occurs.
The pertinent mandatory omnibus liability coverage provisions of N.J.S.A. 45:21-1 et seq., regarding rental vehicles provide,
45:21-1.
As used in this chapter:
* * * * * * * *
"Owner" means any and every person engaged in the business of renting or leasing motor vehicles, without a driver, to be operated by the lessee or bailee, his agent or servant, for purposes other than the transportation of passengers for hire.
45:21-2.
Every owner, as defined in section 45:21-1 of this title, shall file with the clerk of the municipality in which he resides or has his place of business a policy of insurance of a company duly licensed to transact business under the insurance laws of this state, insuring such owner against loss from the liability imposed by law upon such owner for damages on account of bodily injury or death suffered by any person other than a person in the employ of such owner, or a person in, on or about such motor vehicle in the status of a driver, passenger for hire or occupant, as a result of accidents occurring by reason of the negligent maintenance, use or operation of such motor vehicle upon the public highways of this state.
45:21-3.
Such policy of insurance shall provide a limit of liability on the part of the insurer, exclusive of court costs and the expenses of investigating and defending suits, for each motor vehicle covered thereby, in the sum of $10,000.00 for bodily injury to or death of any 1 person, and, subject to the same limit of liability for each person so injured or killed, in the sum of $20,000.00 for bodily injury to or death of more than 1 person in any 1 accident, and for damage to property in the sum of $5,000.00,[2] and shall provide for the payment, subject to the aforesaid limits of liability, of any final judgment recovered by any person *401 on account of the ownership, maintenance and use of such motor vehicle by either the owner or the lessee or bailee, his agent or servant, or any fault in respect thereto, and shall be for the benefit of any person suffering loss, damage or injury as aforesaid. Such policy of insurance shall contain a provision for a continuing liability thereunder, subject to the aforesaid limits of liability, notwithstanding any recovery thereon, and shall further provide that nothing contained therein, nor the violation of any of the provisions thereof, shall relieve the insurer, within the limit of liability aforesaid, from the payment of any such judgment; but this provision shall not, as between the insurer and the assured, affect the rights given by the policy to the insurers against the assured because of any such violation or otherwise. The provisions of this chapter, so far as may be requisite, shall be read into and deemed to form a part of any such policy. Amended by L. 1959, c. 45, p. 150 § 1, eff. July 1, 1959.
We start by repeating the basic notion that such omnibus liability coverage clauses are statutorily mandated to guard against "the defense that the insured was not operating the vehicle personally or through an agent." 6C Appleman, Insurance Law and Practice § 4353, at p. 29-31 (1979). These provisions have been liberally construed to require that coverage be provided to all potential drivers of a given vehicle to the extent required to conform them to minimum statutory limits. Id. at 35-39.
In Selected Risks Insurance Co. v. Zullo, 48 N.J. 362 (1966), our Supreme Court reviewed the history and purpose of such omnibus liability coverage clauses in this State, noting that they are mandated by a "strong legislative policy" that automobile tort victims be able to look to "financially responsible persons" from whom to obtain compensation. Id. at 368. It went on to state categorically that there "may be no departure from the omnibus coverage...." Id. at 374. The Court held there that an insurance company cannot avoid liability by claiming that a motorist's use of the insured's automobile exceeded the scope of authority granted by the insured. See generally, 24 New Jersey Practice, Motor Vehicle Law and Practice, § 1005-1009 (1986) (Discussing the broad scope of such omnibus liability coverage).
Liability coverage thus is rendered always available to compensate victims of accidents caused by any permissive driver of *402 the insured vehicle. Williams v. American Home Assurance Co., 121 N.J. Super. 351, 360 (App.Div. 1972), certif. den. 62 N.J. 260 (1973), (citing Matits v. Nationwide Insurance Co., 33 N.J. 488, 497 (1960)). Williams recognized that such liability coverage is also required of an automobile lessor under N.J.S.A. 45:21-1, et seq. since "[t]here appears to be no reason to distinguish the lessor of a rented automobile from one who loans his private car in determining liability for injuries resulting from the operation of his automobile beyond the scope of initial permission." Williams, supra, 121 N.J. Super. at 361.
The Legislature obviously created such a "safety net" in order to guarantee that at least the statutory minimum amount of compensation remains available to individuals injured in automobile accidents by requiring all motorists to provide a minimum level of insurance. N.J.S.A. 39:6-46 (repealed by c. 1979, c. 169, § 5, effective August 9, 1979). See N.J.S.A. 39:6A-4 (similar omnibus provision now part of our "No-Fault Insurance Law," N.J.S.A. 39:6A-1 et seq.). To ensure the required minimum insurance it has provided for penalties in the event of a failure to do so. N.J.S.A. 39:6B-1 et seq. In furtherance of this goal it has also mandated that any insurance policy issued in this State must comply with these minimum coverage requirements. N.J.S.A. 17:28-1.1.
The automobile-rental statutory provision implicated in this case, N.J.S.A. 45:21-1 et seq., is part and parcel of that statutory "safety net." It insures that a lessor will provide such insurance coverage irrespective of whether a lessee does so. Thus, regardless of who causes injuries or damages through the negligent operation of a leased vehicle, a victim will be able to seek compensation, at least to the extent of the (present) statutory minimum of $15,000/$30,000 for personal injuries and $5,000 for property damage.
Construing these requirements in General Accident Group of Ins. v. Liberty Mut. Ins. Co., 191 N.J. Super. 530 (App.Div. 1983), we held that a "step-down" clause  a clause *403 which provides higher coverage limits for the automobile lessor and his employees, but decreases coverage limits available to the lessee and his permissive users  was valid and was not inconsistent with the omnibus liability coverage requirements of N.J.S.A. 39:6-46. The policy there provided $2,000,000 coverage for the owner-lessor and his employees but lessees and their permissive users were covered for a lesser amount of up to $100,000 per person or $300,000 per accident. General Accident, 191 N.J. Super. at 531. We hereby reaffirm the wisdom of that decision and observe that had the Universal policy provided unconditional coverage for lessees at a lower monetary limit, we would continue to have no hesitancy in upholding the validity of such a "step-down" arrangement, even though only the statutory minimum coverage was afforded to a lessee. The problem here, however, is not simply whether the step-down is valid; rather, we must determine whether a lessor's policy can make even that coverage contingent upon a lessee's failure to obtain their own coverage.
Universal contends that its Endorsement 038 is similar to the provision in General Accident because its effect is to provide for such mandatory minimum coverage if the lessee fails to obtain insurance, allows his coverage to lapse, or does anything which vitiates the statutory omnibus liability coverage requirement. We do not agree, however. We read N.J.S.A. 45:21-1 et seq., as requiring Open Road, as an "owner," to "provide" a liability policy of insurance for the statutorily mandated minimum of $15,000/$30,000 regardless of whether any "lessee or bailee, his agent or servant" otherwise procures and maintains such insurance in effect to any extent. While we recognize that such a construction may result in a potential doubling of the available minimum statutory coverage because of the amount of other insurance carried by a lessee we believe that to be irrelevant since the statute does not allow for any escape in coverage by such an owner in situations where the lessee has his own coverage. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959); Williams v. Home Assur. Co., 121 *404 N.J. Super. 351 (App.Div. 1972) certif. den. 62 N.J. 260 (1973). See also Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 292 (1974) (concerning such duplicate coverage for uninsured motorists); Cf. e.g., Auto-Owners Ins. Co. v. Brockman, 524 So.2d 490 (Fla. Dist. Ct. App. 1988) (Florida statutory provision, Fla. Stat. Ann. § 627.7263, allows lessor to shift obligation of carrying liability insurance to lessee, provided that lessor's contract notifies lessee of this obligation in bold print).
Thus we hold that, to the extent Universal's endorsement 038 attempts to preclude coverage entirely because of the other Allstate coverage secured by the Raos in compliance with the leasing agreement, it is contrary to the statutory mandate and constitutes an illegal escape clause. Selected Risks Insurance Co. v. Zullo, 48 N.J. 362 (1963).
However, we must still resolve the issue of whether that abortive escape attempt by Universal requires it to provide the Raos with coverage only for the statutory minimum limits of $15,000/$30,000 or whether the endorsement is rendered entirely nugatory, making available to the Raos the full policy limits of $300,000 provided for Open Road. We think that the former is the mandated and just result for the reasons which we will hereafter explain.
In the present case, Endorsement 038, set out earlier in this opinion, included a parenthetical phrase which constituted what we have determined to be an invalid escape clause. Although that clause has been invalidated, we see no reason therefore to strike the remainder of the clause which provides that a lessee will only be covered for the statutory minimum.
One factor in our determination is the contractual nature of the relationship between the leasing company and its lessee. See General Accident, supra. 191 N.J. Super. at 534-537. In general, we think that an individual who uses a vehicle in a private setting may reasonably assume that the owner of the car has adequate and lawful insurance coverage. That is to say, a person who occasionally borrows a friend's or neighbor's *405 car should not have to worry about such insurance coverage. Moreover, as previously noted, the availability of a minimum amount of insurance proceeds as compensation for an injured party should not turn on the nature of the permission granted by the insured owner in such circumstances; nor should compensation be denied because the insured granted permission to one user, and that permissive user loaned the car to another.
On the other hand, in the present case, the relationship between the owner-lessor and a lessee is contractual in origin and requires a lessee to obtain his own insurance to protect himself and any permissive user. In such case the lessor has made it clear to the lessee in writing that it will not provide such liability insurance coverage except, as discussed above, to the extent mandated by statutes designed to ensure the availability of such limited compensation to a victim where a lessee has failed to obtain the required insurance. Unlike the occasional user in a private or social setting, if a leasing company is required to provide a higher coverage limit for lessees (or speculate as to the lessee's permissive users) we perceive that it would be either impossible or too costly to obtain. See General Accident, supra. at 536.
It is important to remember that it is the level of monetary protection, rather than the range of covered drivers, which is in issue before us. Thus, we regard as irrelevant in this context those cases which have invalidated insurance policy provisions purporting to exclude some class of drivers entirely from coverage. While the Zullo Court did announce that "there may be no departure from the omnibus coverage ...", that case deals with policy limitations which sought to limit the class of covered permissive users, and does not involve restrictions on the monetary limits of the policy. The Court there was clarifying the extent to which the permissive user limitation could be relied on by an insured whose permissive user allows another to use the car. Thus, it did not purport to resolve questions relating to monetary limits which face us. The requirement of providing broad minimum coverage discussed there does not *406 necessarily lead to the conclusion that the broadest full policy coverage is required where the insurer unsuccessfully attempts to limit its liability under an invalidated section of an otherwise acceptable escape clause. See e.g., Willis v. Security Insurance Group, 104 N.J. Super. 410 (Ch.Div. 1968) aff'd o.b. 53 N.J. 260 (1969) which held that any restriction in omnibus coverage which contravenes the statutory policies articulated in those decisions is invalid, citing the Zullo decision and Williams v. American Home Assurance Co., supra.
In other words, the New Jersey cases, such as Zullo and Willis, were concerned primarily with policy provisions seeking to impose limitations on the persons covered, not differing limits of monetary coverage. Where monetary limits are concerned neither Zullo nor Willis support the imposition of uniformity requirements. Indeed, in Zullo, 48 N.J. at 373 our Supreme Court specifically noted that,
"A policy [of insurance] which purports to have a more restrictive omnibus coverage is automatically amended to conform to the statutory standard. N.J.S.A. 39:6-48(b).
The statutory standard referred to in Zullo is $15,000/$30,000; nothing in that opinion or the applicable legislation requires greater coverage. Thus, when a policy is "automatically amended," it should be amended to the extent of the statutory limit, especially in cases such as this, where the policy language explicitly limits the lessee's coverage to such a statutory minimum.
Moreover, it appears to be highly unlikely that one who enters into a four year automobile lease would assume that the commercial lessor would provide any more insurance coverage than absolutely required for such an extended period absent a specific contract provision to that effect. In such a case it is not unreasonable to require only that such a lessor extend coverage to his lessees only for the minimum required by law. Thus, in light of the leasing contract in this case, we think that the rationale of the General Accident, in approving the step-down *407 arrangement is applicable to this aspect of this issue and constitutes a sensible result. It provides the basic statutory insurance proceeds for the victim, while allowing lessors to purchase greater coverage for themselves and their permissive users.
In a recent case, Allstate Insurance Co. v. Royal Globe Insurance Co., 195 N.J. Super. 598 (App.Div. 1984) Judge Botter, the author of the General Accident opinion, considered a policy purporting to restrict insurance coverage. There an automobile rental agency contract provided that no one under age 21 could drive the leased vehicle. The lessee of the vehicle permitted his 20 year-old stepson to drive the leased vehicle; the stepson had an accident, injuring his passenger. When the passenger sued the lessee and the lessor, the lessor's insurance company claimed that its policy only provided statutory minimum coverage, rather than the normally higher coverage where the vehicle was driven in violation of the lease agreement (such as by an underage driver). The Allstate court, citing Zullo and other cases, held that a class of drivers, such as a driver under age 21, may not be excluded from broad policy coverage. More importantly, Judge Botter noted there that "since the restrictions on the persons who may use the leased vehicle with permission of the lessee will not be enforced with respect to insurance coverage, we are disinclined to enforce a provision that attempts to reduce coverage because of the age of the driver." Id. at 606. That court invalidated the clause in the policy which provided that, in the event coverage was imposed by operation of law, such coverage would be at the minimum monetary limits imposed by the state's financial responsibility law only because the written policy gave "the appearance of providing [the higher] limits." Id. at 606. Aside from that, the Allstate court did not depart from the holding of General Accident, but explained that the latter sought to uphold "a difference in coverage for leased vehicles for an owner who is *408 in the auto-renting business as compared with lessees."[3]
In Nichols v. Anderson, 837 F.2d 1372 (5th Cir.1988), the court, recognizing what it viewed as varying results in state court decisions in this area, resorted to customary contract principles to reach the same result we have reached here. The Nichols court thus held that the effect of the invalidity of an escape clause was the elimination of that clause only and not the entire express provision of the policy from which the escape clause was clearly severable. The decisions to which it referred which reached a contrary conclusion as to the amount of coverage resulting from the invalidation of an escape clause are not persuasive here because, unlike the endorsement before us, none of those there construed contained specific language which also limited the available coverage to the statutory minimum.
In other jurisdictions a similar result requiring coverage only for the statutorily mandated minimum has been reached in a variety of circumstances. For example, in American Tours, Inc. v. Liberty Mutual Insurance Company, 315 N.C. 341, 338 S.E.2d 92 (1986), the court enforced a clause which provided that if liability was imposed by statutory interpretation, such *409 liability would be at the statutory minimum, and not the full policy coverage. The court observed that an insurance company "cannot be liable for any greater amount of coverage than that provided by operation of law or voluntarily in its policy." Id. at 350, 338 S.E.2d at 98. Thus, the court held that where a policy provided lower coverage than that mandated by the omnibus liability coverage statute, the policy would be judicially amended to provide only the statutory minimum coverage, not the full policy coverage. Ibid. See Balboa Ins. Co. v. State Farm Mutual Auto. Ins. Co., 17 Ariz. App. 157, 496 P.2d 147 (1972) (where lessor's policy, in clear and unambiguous language, limits the lessee's coverage in a rental vehicle to the amount specified by the State's financial responsibility act, the step-down provision will be enforced); Davis v. DeFrank, 306 N.Y.S.2d 827, 33 A.D.2d 236 aff'd, 27 N.Y.2d 924, 266 N.E.2d 822, 318 N.Y.S.2d 142 (1970) (there is no public policy reason for not enforcing an insurance policy which provides coverage for a lessee up to the State's minimum financial responsibility limits, in situations where the lessee failed to have such insurance, but denied any coverage where the lessee did have other collectible insurance); State Farm Mutual Auto. Ins. Co. v. Western Cas. & Sur. Co., 477 S.W.2d 421 (Mo. 1972) (in consideration of reduced premium rates, a garage insurance policy providing coverage for customers except where they had other collectible insurance was valid). See also Travelers Indemnity Co. v. Chappell, 246 So.2d 498 (Miss. 1971), and Reliance Ins. Co. v. Maryland Cas. Co., 453 So.2d 854 (Fla. Dist. Ct. App. 1984), aff'd 478 So.2d 1068 (Fla. 1985).
Florida decisions have also permitted a lessor to provide lower coverage for lessees. E.g. Lehman-Eastern Auto Rentals, Inc. v. Brooks, 370 So.2d 14 (Fla. Dist. Ct. App. 1979). There, however, the leasing contracts containing such a provision appears to have been sanctioned because of its compliance with the Florida statute which authorizes the lessor to insure the lessee at the statutory minimum, or shift entirely the burden of liability insurance to the lessee by clear contractual language.
*410 A Colorado court, however, appears to have reached a contrary result, holding that where a policy provides greater coverage limits than the statutory minimum for some insureds only, all of those covered under the policy must be covered at the policy limits. Meyer v. State Farm Mutual Auto Insurance Co., 689 P.2d 585 (Colo. 1984). After invalidating an "escape" provision which attempted to deny coverage to members of the insured's household, the Meyer court concluded that the insured's family would be covered at the full policy limits, not simply the statutory minimum. In that case, however, contrary to Universal's policy, there was conspicuously absent any policy language which would serve as notice that a lower coverage limit would be effective. In a case categorizing Meyer as a minority view, however, the Utah Supreme Court emphasized the majority view that freedom of contract should allow an insurer to exclude certain classes of drivers from policy coverage above the statutory minimum. State Farm Ins. Co. v. Mastbaum, 748 P.2d 1042 (Utah 1987). As we have previously stressed, the result in the present case is rooted in contractual principles; where the contractual language outlines differing limits, those limits should ordinarily be enforced.
Nor does Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974), cited by the Raos, mandate a contrary result. There the Supreme Court invalidated an "other insurance" exclusion in an uninsured motorist endorsement of an automobile liability policy because the applicable statute requires each policy issued to independently include an offer of uninsured motorist coverage. Because only statutory minimum coverage was involved in both policies there was no reason to address the issue which is before us.
In sum, we see no compelling public policy or other reason mandating a conclusion that because of Universal's unsuccessful attempt to exclude itself entirely from covering the lessee's use of the Open Road vehicle, that the remainder of the provision should become unenforceable and extend its coverage beyond the $15,000/$30,000 which the Legislature has presently *411 established as the minimum coverage required to be carried. State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co., 270 Md. 591, 312 A.2d 265 (Ct. of App. 1973). Rather than invalidating the entire policy provision, we prefer to treat the invalidated provision as severable, and will enforce the remainder of the insurance contract. We regard this as logical consequence of the underlying validity of the step-down clause such as this in a policy insuring an automobile rental agency. Thus, we recognize that public policy mandates the $15,000/$30,000 minimum, and we wholeheartedly enforce that legislative mandate. We do not, however, find any reason to go beyond that mandate and invalidate an otherwise lawful limiting provision of an insurance contract. We see this result as consistent with Federal Ins. Co. v. Liberty Mutual Ins. Co., 190 N.J. Super. 605 (App.Div. 1983), where we held that while the insurer of the owner of a rental vehicle could not avoid concurrent statutorily mandated personal injury protection (PIP) benefits for the injured lessee driver, it need not extend such PIP benefits beyond the basic statutory benefits provided by the policy.
Furthermore, we observe that any other result would be directly contrary to the specific Universal policy language which contractually mandates that,
If any part of this policy is in conflict with state law, those provisions in conflict will automatically change to conform to the law.
If we are to pay more than mere lip service to the principle that the terms of an insurance agreement are to be enforced as any other contract, absent a conflict with the express or implied public policy of this State, we cannot judicially impose upon Universal here an obligation to pay more than the $15,000/$30,000 limits required by the statutory provisions covering mandatory liability insurance. Sparks v. St. Paul, 100 N.J. 325 (1985). Indeed, our Supreme Court has recently recognized that contractual principles must be applied when interpreting an insurance policy, to the end that the reasonable expectations of the parties are given full effect. Werner Industries, Inc. v. *412 First State Ins. Co., 112 N.J. 30 (1988) (decided October 11, 1988). The Legislature has created an expectation, as a matter of public policy, that an injured party may secure compensation through insurance but only to the extent of the statutory minimum amount. Thus it cannot logically be argued in those circumstances that such a result is contrary to the reasonable expectations of the persons potentially interested in the coverage afforded. Id.
For the reasons indicated, we conclude that Universal must extend coverage to the Raos but only to the extent of the $15,000/$30,000 required by statute. Accordingly, we reverse and remand for entry of a judgment and further proceedings concerning coverage consistent with this opinion.
NOTES
[1] The record submitted to us indicates that only Universal Underwriters Insurance Company filed an answer in this matter. While defendants Paglucci did participate in the proceedings at the trial level they have specifically elected not to participate in this appeal.
[2] While this particular statute indicates a minimum liability coverage for such insurance as $10,000 per person, $20,000 per accident for bodily injury or death and $5,000 for property damage, these amounts are less than the $15,000/$30,000/$5,000 required by the New Jersey No Fault Law, N.J.S.A. 39:6B-1 et seq. This discrepancy is obviously attributable to a legislative oversight in failing to amend this section to conform with the latter statute. See General Accident Group of Ins. v. Liberty Mutual Ins. Co., 191 N.J. Super. 530, 535 (App.Div. 1983) (suggesting that the discrepancy between N.J.S.A. 45:21-3 and N.J.S.A. 39:6-46, the predecessor of N.J.S.A. 39:6B-1, et seq., is attributable to such an oversight).
[3] We recognize that the decision in Keystone Ins. Co. v. Atlantic Chrysler Plymouth, 167 N.J. Super. 353 (Law Div. 1979) might suggest a contrary result. There a garage insurance policy provided $1,000,000 coverage for the garage owner and employees, but restricted the coverage available to garage customers to the statutory minimum. Before considering that policy step-down, the court invalidated another provision within the same endorsement, which excluded from coverage garage customers who had their own collectible insurance. After invalidating that "escape" provision, relying on its view of Zullo and other New Jersey cases as authority, the Keystone court held that the remaining step down in monetary coverage was contrary to public policy and accordingly, the entire $1,000,000 coverage was available to the garage customer. We believe that court's analysis of those authorities was simply misplaced. As noted, while those cases deal with the exclusion of some class of drivers from insurance coverage, they do not consider whether differing monetary limits can be applied to various classes of drivers under a given policy. Moreover, to the extent that the Keystone decision conflicts with the result reached here, we disagree with it.