**Edgar SPURLIN, Plaintiff,**

v.

**MERCHANTS INSURANCE COMPANY OF NEW HAMPSHIRE d/b/a Merchants Insurance Group, Defendant.**

**Civ. A. No. 93–30173–MAP.**

United States District Court, D. Massachusetts.

Oct. 28, 1994.

---

58

W. Stanley Cooke, Law Office of W. Stanley Cooke, Pittsfield, MA, for plaintiff.

Robert M. Mack, Morrison, Mahoney & Miller, Springfield, MA, for defendant.

## MEMORANDUM REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

### (Docket Nos. 21 & 24)

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiff Edward Spurlin was injured while a passenger in a "loaner" being used by Gilbert Fox and provided by the service department of Yankee Dodge, an auto dealership in upstate New York. The defendant, Merchants Insurance, issued a garage policy to Yankee Dodge. Plaintiff now argues that he was an insured under defendant's policy. He has brought this claim to collect on a judgment obtained against Fox, the driver of the loaner, in a Massachusetts state court. Plaintiff claims that the Merchants policy issued to Yankee Dodge affords him excess liability in addition to that provided by Fox's insurer.

The sole issue here is the effect to be accorded an "other insurance" clause in Merchants' policy. This provision provided auto liability coverage to lessees of covered rental vehicles in the amount required by law, but *only* in the event the lessee failed to maintain the legally required minimum.

In fact, the driver of the loaner, Fox, carried liability insurance well in excess of the $10,000 minimum required by the applicable New York laws. Indeed, Spurlin received a $100,000 settlement from Travelers Insurance, Fox's insurer.

It is firmly established that New York law does not require that an auto dealership carry liability insurance above the statutory minimum when the lessee carries adequate liability coverage. Under these circumstances, the "other insurance" provision in the Merchants policy relieved the defendant of any liability to plaintiff.

Consequently, the court will allow the defendant's motion for summary judgment and deny the plaintiff's motion. The court's reasoning is set forth below in more detail.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Commercial Union Ins. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993) (citing *Mesnick v. General Electric Co.*, 950 F.2d 816 (1st Cir.1991), *cert. de-*

*nied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)).

Before the court are cross-motions for summary judgment. The record reveals no genuine issue as to any material fact. Interpretation of an insurance contract presents a pure issue of law. This case is therefore ripe for summary judgment.

The defendant argues, and plaintiff does not challenge, that New York contract and insurance law is applicable to the resolution of the insurance dispute. Massachusetts law applies to plaintiff's claims for violation of Mass.Gen.L. ch. 93A and ch. 176D.

### III. *FACTUAL BACKGROUND*

In 1984, plaintiff Edgar Spurlin was seriously injured while a passenger in a car driven by Gilbert Fox. The car Fox was driving was a "loaner" from Yankee Dodge of Schenectady, New York. Fox's vehicle was being repaired in the Yankee Dodge garage. The defendant, Merchants Insurance ("Merchants"), was Yankee Dodge's insurer.

In 1986, Spurlin sued Fox and Yankee Dodge in Berkshire Superior Court for the injuries he experienced in the car accident. In December, 1988 all parties agreed to dismiss with prejudice Spurlin's claims against Yankee Dodge. Prior to trial, Spurlin and Fox reached an agreement in which Fox's insurer, Travelers Insurance, agreed to pay the plaintiff its policy limits of $100,000. In return, Spurlin released Fox from any further personal liability arising out of the 1984 accident. By its terms, the agreement *did not release* Fox to the extent that insurance coverage, other than Travelers, was available to pay any judgment entered against Fox in the imminent trial.

Ultimately, the jury awarded Spurlin $615,000. In August 1992, an execution on the judgment was entered for $962,487, reflecting the jury award, plus interest, but less the $100,000 Spurlin had already received from Travelers. On July 9, 1993, Spurlin commenced this action against Merchants seeking to recover the balance of the judgment.

The complaint contains two counts. Count I seeks satisfaction from Merchants of the state court judgment entered against Fox. In this regard, Spurlin asks that this court declare that Fox was an "insured" under the Merchants policy held by Yankee Dodge. In Count II, Spurlin charges Merchants with a violation of Mass.Gen.L. ch. 93A because the insurer failed to act promptly with respect to a claim. In the same count, plaintiff has also charged defendant with violating Mass. Gen.L. ch. 176D § 3(9) by refusing to pay a claim and not conducting a reasonable investigation based on the available information.

Defendant removed the case to federal court. Cross motions for summary judgment are now before the court to determine if Fox was insured under the Merchants policy.

### IV. *THE POLICY*

Item One of the Schedule of Coverage in the Merchants insurance policy issued to Yankee Dodge states that the insured's business is "New car sales." Item Two of the Merchants insurance agreement states that the liability limit is $1,000,000 for any one accident or loss. PART II of the Merchants policy, entitled "WHICH AUTOS ARE COVERED AUTOS," states that all autos owned by Yankee Dodge or purchased by them until the policy ends are covered autos. The "loaner" driven by Fox was owned by Yankee Dodge and was therefore a covered auto.

Subsection A of PART IV of the policy, entitled "LIABILITY INSURANCE," states:

> 1. We will pay all sums the *insured* legally must pay as damages because of *bodily injury* or property damage to which this insurance applies caused by an *accident* and resulting from *garage operations*.

In Part I, entitled "Words and Phrases," the term "Garage Operations" is defined as follows:

> Garage Operations means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the autos indicated in Part II as covered autos. Garage operations also include all operations necessary or incidental to a garage business.

This dispute focuses on the policy language in the following two subsections of Part IV of the Merchants policy. Subpart C of Part IV, entitled "WE WILL NOT COVER—EXCLUSIONS," states in relevant part that, this insurance does not apply to:

7. Any covered auto while leased or rented to others. This exclusion does not apply to a covered auto you rent to one of your customers while his or her auto is left with you for service or repair.

Subpart D of Part IV is entitled "WHO IS AN INSURED." It states in relevant part the following:

1. *For Covered Autos.*

a. *You* are an *insured* for any covered *auto.*

b. Anyone else is an insured while using with your permission a covered auto except:

(3) Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of *yours:*

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an *insured* but only up to the compulsory financial responsibility law limits where the covered *auto* is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered *auto* is principally garaged, he or she is an *insured* only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.

## V. DISCUSSION

■ The court must resolve a dispute over the meaning of the "other insurance" clause in Part IV, subsection D.1.b.(3) of the defendant's policy issued to Yankee Dodge. Interpretation of this provision turns in part on whether the liability provisions of the Merchants policy distinguished between Yankee Dodge's "garage operations" and auto sales business.

Merchants convincingly argues that its policy provides no more than the legally required minimum coverage to Yankee Dodge customers who rent a covered vehicle while having their own car serviced. Defendant contends that, pursuant to the "other insurance" clause, Part IV, 1.b.(3), it is liable only if the customer's liability insurance is for *an amount below* the compulsory limit required by law or if the customer does not carry *any* liability insurance.

In either case, defendant argues that its policy provides the minimum coverage required by state insurance law. In New York, in 1984, that amount was $10,000 per person. In this case, Fox, the lessee, carried $100,000 of liability insurance. Merchants correctly concludes, therefore, that its liability policy affords no coverage here.

Plaintiff's counter-argument relies entirely on the existence of a supposed distinction in the insurance policy between coverage of the auto dealership and coverage of "garage operations." He concedes that there is no express provision in the policy that divides Yankee Dodge's business in such a manner. Spurlin's argument is that the policy *implicitly* distinguishes between the auto dealership and the garage operations of Yankee Dodge.

Plaintiff contends that Merchants' policy provides the full $1 million in liability coverage for lessees who drive Yankee Dodge loaner vehicles when their own autos are being serviced by Yankee's repair shop. According to Spurlin, the "other insurance" exclusion clause at Section IV D.1.b.(3), *supra* at 4, is *only* relevant when a vehicle is rented or leased through the auto dealership to customers who are not having their vehicles repaired by the garage.

This interpretation is based on plaintiff's reading of the exclusions to liability in Part IV, C.7. *Supra* at 4. Spurlin contends that this exclusion provision distinguishes between autos leased as part of the auto dealership business—which are excluded from coverage—and autos rented to customers who leave their vehicles for repair—which are covered vehicles. This language—the argument runs—is to be read in conjunction with subsection A, Part IV, which states that Mer-

chants will pay damages for a covered auto that gets in an accident resulting from Yankee Dodge garage operations. Construed in this manner, Part IV D.1.(b)3 would not be applicable to loaner vehicles used by customers of Yankee Dodge's repair shop.

Essentially, plaintiff concedes that if this section were applicable to loaner vehicles rented by customers having their autos repaired at Yankee, it would effectively function in this instance as a no-liability escape clause and preclude Spurlin's recovery of damages from defendant. Because the court so finds, plaintiff's claims must fail as a matter of law.

### A. *New York Insurance Law*

■ The principle of insurance law governing this dispute is set forth in *Davis v. De Frank*, 33 A.D.2d 236, 306 N.Y.S.2d 827, 831 (1970), *aff'd.*, 27 N.Y.2d 924, 318 N.Y.S.2d 142, 266 N.E.2d 822 (1970). New York law permits an "other insurance" provision to serve as an escape clause as long as it covers a risk when no other valid and collectible insurance—either primary or excess—is available. *Id.; Argonaut Insurance Co., Inc. v. U.S. Fire Insurance Co.*, 728 F.Supp. 298, 302, n. 5 (S.D.N.Y.1990). New York has no requirement that a rented vehicle already insured through a lessee's own policy be insured through the lessor. *Allstate Insurance Company v. Mark, Action Auto Rental, Inc.*, 156 Misc.2d 188, 592 N.Y.S.2d 212, 213 (1992). Consequently, established public policy at the time of the accident only required Yankee Dodge and its insurer, Merchants, to provide coverage on its rental vehicles in those instances when the customer was uninsured or insured below the limit required by the state in which the vehicle is principally garaged.

The language of the Merchant's policy does not go beyond this legal minimum. Defendant's policy issued to Yankee Dodge covered all "garage operations." The insurance agreement clearly defined garage operations as including "the ownership, maintenance or use of covered autos" and all operations "necessary or incidental" to their use. In terms of liability coverage, this language can only be interpreted as extending to covered autos used in *all* aspects of Yankee Dodge operations, whether the auto dealership or the repair service. The express provisions of the contract do not divide customers of Yankee Dodge into two categories: those who seek auto repair service and others who lease or purchase cars.

Concededly, Spurlin's position is not without legal support. Unfortunately for plaintiff, the decisions he relies on conflict with New York law and rest on contrary public policy considerations in other states. As explained below, the governing law precludes reading into this policy an implied distinction between the auto sales portion of the business and the service operations.

Plaintiff substantially relies on *Stanfield v. Hartford Accident and Indemnity Company*, 581 So.2d 340 (La.Ct.App.1993). This case involved a bus company, Tri–State Charters ("Tri–State"), that had one of its buses repaired by Wayne Bus and Equipment Sales ("Wayne"). Wayne not only repaired buses, it was a franchised bus dealer. During the repairs, Wayne provided Tri–State with a loaner. An employee of Tri–State caused a collision while driving the loaner bus. The issue at trial was identical to that posed here: did the customer exclusion provision of Wayne's garage insurance policy apply to the repair business as well as to the bus dealership customers? The *Stanfield* court held that Wayne's insurer, Hartford Accident and Indemnity Company, provided primary coverage and Tri–State's insurer, National Fire and Marine Insurance Company, provided only excess coverage.

Critical to the reasoning of the *Stanfield* decision, and plaintiff's position here, is *Connecticut Indemnity Company v. Cordasco*, 369 Pa.Super. 439, 535 A.2d 631 (1987). In that case, again, an accident was caused by the driver of a loaner vehicle owned by an auto dealership, Gillner Motors. Like Yankee Dodge, Gillner Motors operated a repair service department. Gillner's insurance policy contained a provision which disavowed any coverage for rented autos if the lessee had other liability coverage which applied "in whole or in part as primary, excess or contingent coverage." *Id.* at 443, 535 A.2d 631. The Pennsylvania Superior Court found this

clause to be an unenforceable escape clause. The *Connecticut Indemnity* court explained that, as a matter of public policy, the Pennsylvania Supreme Court disfavored escape clauses. *Id.* at 444, 535 A.2d 631, citing *Grasberger v. Liebert and Obert, Inc.,* 335 Pa. 491, 6 A.2d 925 (1939). Accordingly, the Pennsylvania Supreme Court instructed lower courts to "strike ... escape clause ... provision[s] and enforce the policies as if the escape provision did not exist." *Id.* On this basis, Gillner's insurer, Connecticut Indemnity, was obligated to provide primary coverage. The court held that the driver's insurer, State Farm Mutual, had no liability at all.

An extensive discussion is not needed to demonstrate that New York insurance law is at loggerheads with the policy set forth in these decisions. New York and other jurisdictions give effect to provisions of "insurance policies which provide coverage for a lessee up to the State's minimum financial responsibility limits, in situations where the lessee failed to have such insurance, but den[y] coverage where the lessee [has] other collectible insurance." *Rao v. Universal Underwriters Insurance Company,* 228 N.J.Super. 396, 409, 549 A.2d 1259 (1988) (expressly agreeing with *Davis v. DeFrank,* 33 A.D.2d 236, 306 N.Y.S.2d 827 (1970) and decisional law from Florida, Mississippi and Missouri following similar policy) (further citations omitted). The *Stanfield* and *Connecticut Indemnity* decisions flow from an opposing public policy.

A court sitting in diversity, particularly when applying the law of another jurisdiction, is obliged to follow that state's governing decisional law. Blazing new legal trails in these circumstances is to be avoided. *See Kotler v. American Tobacco Co.,* 926 F.2d 1217, 1224 (1st Cir.1990), *vacated* on other grounds, —— U.S. ——, 112 S.Ct. 3019, 120 L.Ed.2d 891 (1992), *reaff'd,* 981 F.2d 7 (1st Cir.1992). Consequently, the court must reject the legal and policy arguments advanced in the Pennsylvania and Louisiana decisions plaintiff relies on.

B. *Mass.Gen.L. ch. 93A & ch. 176D*

■ In Count II, Spurlin has charged the defendant with violations of Mass.Gen.L. 93A

and 176D because Merchants refused to satisfy plaintiff's judgment and execution against Fox. Where an insurer's denial of coverage is correct there can be no violation of Mass.Gen.L. ch. 93A or ch. 176D. *Alan Corp. v. International Surplus Lines Insurance Co.,* 823 F.Supp. 33, 38 (D.Mass.1993), *affirmed,* 22 F.3d 339 (1st Cir.1994); *Gulezian v. Lincoln Insurance Co.,* 399 Mass. 606, 506 N.E.2d 123 (1987). Defendant's denial of plaintiff's claims for coverage was based on a plausible interpretation of its insurance policy and was therefore made in good faith. *See Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co.,* 406 Mass. 7, 14, 545 N.E.2d 1156 (1989). There is simply no evidence that, in its dealings with plaintiff, the defendant violated Massachusetts insurance or consumer law.

## VI. CONCLUSION

For the reasons set forth above, the court will ALLOW the Amended Motion for Summary Judgment of defendant Merchants Insurance and DENY plaintiff Spurlin's Motion for Summary Judgment.