280 N.J. Super. 414 (1994)
655 A.2d 931
TSHOMBA HARRISON, PLAINTIFF,
v.
FORD MOTOR CREDIT COMPANY AND THOMAS GIANFRANCESCO, DEFENDANTS, AND SNAPPY CAR RENTAL AND PROGRESSIVE CASUALTY INSURANCE COMPANY, DEFENDANTS-THIRD PARTY PLAINTIFFS, RESPONDENTS/CROSS-APPELLANTS,
v.
ALLSTATE INSURANCE COMPANY, THIRD PARTY DEFENDANT, APPELLANT/CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1994.
Decided December 1, 1994.
*415 Before Judges GAULKIN, KESTIN and A.A. RODRIGUEZ.
John L. McDermott argued the cause for appellant/cross-respondent, (McDermott & McGee, attorneys; Mr. McDermott, on the brief).
Thomas J. Decker argued the cause for respondents/cross-appellants (Schechner & Decker, attorneys; Mr. Decker, on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Three provisions of a trial court order in an insurance coverage dispute have generated this appeal. They are:
(a) that the Progressive Casualty Insurance Company shall, under its policy with Snappy Car Rental, provide primary liability coverage to Tshomba Harrison in the suit brought by Joseph and Marie Gianfrancesco; and it is further Ordered
(b) that the limits of the Progressive Casualty Insurance Company's liability coverage of Tshomba Harrison is $15,000.00/$30,000.00; and it is further Ordered

*416 (c) that the Allstate Insurance Company, under its policy number XXXXXXXXX on a 1983 Honda owned and registered by Tshomba Harrison in North Carolina, provide excess coverage for Tshomba Harrison in the suit brought by Joseph and Marie Gianfrancesco....
Progressive Casualty Insurance Company (Progressive) along with its insured, Snappy Car Rental (Snappy), appeal from paragraphs (a) and (c) of the order. Allstate Insurance Company (Allstate) appeals from paragraph (b).
The matter arises from a $75,000 settlement of a suit generated by an automobile accident. Another insurer, not a party to this appeal, agreed to pay its $15,000 policy limit to the plaintiff on behalf of Tshomba Harrison, the party at fault. Progressive and Allstate participated in the settlement, agreeing that, of the remaining $60,000, Progressive would pay $15,000 and Allstate would pay $45,000 subject to the resolution of the cross-complaints seeking a declaration of coverage.
Progressive had issued an insurance policy to Snappy with $500,000 liability coverage and uninsured/underinsured (UM/UIM) coverage limits of $15,000/$30,000. Harrison, having rented the vehicle involved from Snappy, was insured under that policy. A clause in the rental agreement provided:
ONLY IF REQUIRED BY STATE LAW OR BY THE EXPRESS TERMS OF THIS AGREEMENT. Snappy will indemnify and hold harmless Renter and authorized operators only, during the term of this agreement, for bodily injury and property damage claims up to the minimum dollar amounts required for any one (1) rental vehicle per occurrence, by the applicable motor vehicle financial responsibility laws of the State in which this agreement of rental was executed. The foregoing indemnification and hold harmless provision shall be applicable only to losses arising out of the authorized use of the vehicle. However, if Renter is covered by any other insurance, the indemnification and hold harmless provision of this agreement, shall be excess coverage.
Progressive's policy of insurance provided in an "other insurance" clause:
For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.
and in a "cutback endorsement":
the insurance provided by this policy for the lessee is ... subject to the terms, including any limit of liability, conditions, restrictions, and limitations contained in *417 the lease or rental agreement, providing our undertaking this policy is not enlarged or extended. [sic]
Allstate had issued an insurance policy in respect of Harrison's own vehicle in another state with $100,000/$300,000 liability coverage. With regard to the insured's use of a vehicle he did not own, the policy provided:
OTHER INSURANCE
If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
A provision of the same purport exists in the Progressive policy.
The issues raised in this case are governed by the principle established in Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 147 A.2d 529 (1959). There, as here,
both policies provide that they shall be "excess" insurance. However, it is obvious that there can be no "excess" insurance in the absence of "primary" insurance. Since neither policy by its terms is a policy of "primary" insurance, neither can operate as a policy of "excess" insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses.
[Id. at 562, 147 A.2d 529]
To the extent our decision in Allstate Ins. Co. v. Royal Globe Ins. Co., 195 N.J. Super. 598, 481 A.2d 298 (App.Div. 1984), relied upon by Allstate, as the appellant here, may be seen to suggest a different result, we note our observation there, id. at 607, 481 A.2d 298, that there was a "difference in policy terms" from those extant in Cosmopolitan. Unlike the situation in Allstate, we are here confronted, as the court in Cosmopolitan was, by two policies which, on their faces, both purport to provide "excess" coverage. We also do not see the "cutback endorsement" in Progressive's instrument as being violative of public policy. The operation of the Progressive insurance policy with the endorsement, when taken with the provisions of the referenced rental agreement, results in the renter being insured by Progressive for the minimum *418 amounts required by law, for UM/UIM purposes as well as others, regardless of whatever other insurance that renter may have. See Rao v. Universal Underwriters Ins. Co., 228 N.J. Super. 396, 549 A.2d 1259 (App.Div. 1988).
We therefore disagree with the trial court's conclusion that the Progressive policy is primary and the Allstate policy excess. We regard as persuasive the reasoning of the trial court in Rogers v. Snappy Car Rental, Inc., 272 N.J. Super. 346, 639 A.2d 1154 (Law Div. 1993), which also relied upon the Cosmopolitan principle, and where the salient facts and the issues were essentially identical to those we face here.
Nevertheless, even with both policies as primary, the dollar liability result reached by the trial court is correct. By reference to the "cutback endorsement" and the referenced language of the rental agreement, the limit of Progressive's primary UM/UIM coverage for renters is the minimum dollar amounts required by law, i.e., $15,000/$30,000. Allstate's policy provides primary UM/UIM coverage of $100,000/$300,000. Thus, the measure of Progressive's responsibility is its policy limit of $15,000 and the measure of Allstate's is the balance of the settlement, $45,000, since that amount is within Allstate's $100,000 policy limit. Rao v. Universal Underwriters Ins. Co., supra, 228 N.J. Super. at 410-12, 549 A.2d 1259.
We have not addressed the issue of pro rata allocation raised at oral argument. That question was not raised in the pleadings or otherwise presented to the trial court and is, consequently, not before us.
Although we have modified the basis of decision, the judgment of the trial court in respect of the liability of the parties is affirmed.