USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2232 EDGAR SPURLIN, Plaintiff, Appellant, v. MERCHANTS INSURANCE COMPANY OF NEW HAMPSHIRE, d/b/a MERCHANTS INSURANCE GROUP, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ W. Stanley Cooke for appellant. ________________ Carol A. Griffin with whom Robert M. Mack and Morrison, Mahoney & ________________ ______________ ___________________ Miller were on brief for appellee. ______ ____________________ June 7, 1995 ____________________ BOUDIN, Circuit Judge. On June 8, 1984, Gilbert Fox _____________ left his car for repairs at Yankee Dodge, a Schenectady, New York, car dealership and service shop. Yankee Dodge gave him a "loaner" car to use until the repairs were completed. Later that day, Fox was involved in an auto accident in Massachusetts while driving the loaner car. His passenger, Edgar Spurlin, was badly injured. In August 1986, Spurlin filed a tort action against Fox and Yankee Dodge in Massachusetts superior court based on the accident. Fox was insured by Travelers Insurance Company, and Yankee Dodge was insured by Merchants Insurance Company of New Hampshire under a "garage policy." After negotiations, Spurlin dismissed his claim against Yankee Dodge with prejudice. He also negotiated a settlement with Travelers for $100,000, the limit of Fox's policy. In exchange, Spurlin released Fox from any liability for the accident except to the extent that Fox was covered by other insurance policies. Spurlin's case against Fox proceeded to trial in the state court and resulted in a jury verdict of $615,000 in favor of Spurlin. The execution of judgment issued in the amount of $962,487.25, which represented the $615,000 jury verdict plus $436,650 in interest, less the $100,000 settlement from Travelers. Spurlin demanded payment by -2- -2- Merchants on the ground that Fox was an insured under the Yankee Dodge garage policy. Merchants disclaimed coverage. On July 9, 1993, Spurlin filed the instant action against Merchants in Massachusetts superior court, alleging in the first count that his injuries were compensable under Merchants' insurance policy and in the second count that Merchants had violated Mass. Gen. L. ch. 93A, and Mass. Gen. L. ch. 176D. Merchants removed the case to the district court based on diversity jurisdiction. On cross motions for summary judgment, the district judge granted summary judgment in favor of Merchants. Spurlin v. Merchants Ins. Co., 866 F. _______ __________________ Supp. 57 (D. Mass. 1994). Spurlin now appeals. The parties agree that under Massachusetts choice of law rules, which bind the federal court in a diversity case, New York law governs the coverage issue. Under the Yankee Dodge garage policy, apparently a standard form, liability insurance is provided for "an insured" in an accident involving a "covered auto." The loaner car is admittedly a covered auto under the policy, and "an insured" includes not only Yankee Dodge but also "anyone else . . . using with your [Yankee Dodge's] permission a covered auto" except: (3) Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of yours: (a) Has no other available insurance . . ., he or she is an insured but only up to the compulsory or financial -3- -3- responsibility law limits where the covered auto is principally garaged. (b) Has other available insurance . . . less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance. The protection provided to Yankee Dodge's customers, such as Fox, accorded with New York insurance law requiring carriers to provide at least $10,000 in liability coverage to "permissive users" of insured vehicles. See Davis v. ___ _____ DeFrank, 306 N.Y.S.2d 827, aff'd, 266 N.E.2d 822 (1970). But _______ _____ New York law only requires such coverage for permissive users to the extent that they are not otherwise insured, which explains the "However" proviso in the Yankee Dodge policy. Fox did have more than $10,000 in liability coverage under his own policy. The district court held that Fox, being so insured, was excluded from "insured" status by the plain language of exception (3), quoted above. Reviewing the interpretation of contract language de novo, Bird v. Centennial Ins. Co., 11 _______ ____ ____________________ F.3d 228 (1st Cir. 1993), we agree. If this were all that the case involved, it would be sufficient to affirm on the basis of the district court's very able opinion. But Spurlin offers a counter-argument that deserves brief comment. -4- -4- Spurlin's theory is that the clause (3), with its reference to an auto dealership, applies only to Yankee Dodge's supply of new cars; its repair work, Spurlin argues, is a different phase of Yankee Dodge's business; the loaner car was supplied to Fox as a repair customer; and clause (3) therefore does not apply to Fox. In other words, Spurlin wishes to read clause (3) as if it excepted from coverage "your customers to the extent that they are customers of the new-car phase of your business."  Unfortunately for Spurlin's argument, the clause actually excludes "your customers, if your business is shown . . . as an auto dealership," as Yankee Dodge clearly was. The clause does not purport to divide the business into phases and limit the exclusion to only one phase. Nor is it apparent why Yankee Dodge would wish to provide liability insurance to users of loaner cars in any phase of its business--a step that would ultimately increase its own premiums--over and above the contingent minimum required by New York law.  In support of his reading, Spurlin cites two cases decided by intermediate appellate state courts, one decided over a forceful dissent. See Stanfield v. Hartford Accident ___ _________ __________________ & Indem. Co., 581 So. 2d 340 (La. Ct. App. 1991); Connecticut ____________ ___________ Indem. Co. v. Cordasco, 535 A.2d 631 (Pa. Super. Ct. 1987). __________ ________ Both courts adopted Spurlin's reading on similar facts and -5- -5- almost identical policy language. By contrast, Merchants cites a number of state high courts that have rejected Stanfield's and Cordasco's reasoning. See, e.g., Globe _________ ________ ___ ____ _____ Indem. Co. v. Jordan, 634 A.2d 1279 (Me. 1993); Schoenecker __________ ______ ___________ v. Haines, 277 N.W.2d 782 (Wis. 1979). ______ Spurlin, and the cases on which he relies, also cite to another provision seemingly common to garage policies and present in this case. This provision excludes from coverage any covered auto "while rented or leased to others" but also provides that the exclusion does not apply to a covered auto "you rent to one of your customers while his or her auto is left with you for service or repair." On its face, neither the exclusion nor the exception to it has anything to do with a case like ours since Yankee Dodge did not rent or lease the loaner car to Fox. Nor do exclusions themselves create coverage. See 13 J. Appleman, Insurance Law and Practice  ___ ___________________________ 7387, at 179 (rev. ed. 1976). The exclusion does create a puzzle: it leaves the impression that a garage that rented loaner cars to customers during repairs, but was not part of a new car dealership, might be buying liability insurance for its customers unlimited by clause (3). We do not know whether such garages exist or, if they do, whether such coverage is intended or the result of a glitch. But the exclusion does not show that an auto dealership is to be treated as two businesses; nor -6- -6- does it alter the critical fact that Yankee Dodge is an auto dealership and, by the express terms of the policy, clause (3) "except[s]" from insured status a permissive user who is "a customer" of an auto dealer (apart from the contingent minimum protection not here involved). No state court decisions from New York or Massachusetts have been cited to us, so we must make our best guess as to what those courts would say if confronted with the split in authority on the issue before us. In our view, the more straightforward reading of the policy is that adopted by the district court, which is consistent with its language and with what we would expect the parties to the contract--Yankee Dodge and Merchants--to have sought to provide. Nor does this exclusion conflict with New York public policy, since Fox did carry his own insurance above the mandatory minimum. Finally, Spurlin notes that before the tort suit against Fox was filed, Merchants sent several checks to Spurlin under the personal injury protection provision of the Yankee Dodge policy. But we are told, without contradiction, that under New York law, where two or more insurers might afford coverage for an accident, the first one contacted must make personal injury protection payments. Afterwards, the insurers determine which company is liable and resolve the matter between them by reimbursement. Although other interpretive arguments are urged by Spurlin under the policy, -7- -7- the ones we have addressed are his best. As for his claims under the Massachusetts insurance and consumer-protection statutes previously cited, the district court addressed those claims and we have nothing to add to its discussion. Affirmed. _________ -8- -8-