JUSTICE LaVECCHIA dissents from this Order dismissing the appeal.
**374 The issue before this Court raises an issue of general public importance -- the legality and scope of an insurance policy's alleged step-down provision that eliminated liability coverage for an automobile driven by a permissive user. The Court granted certification on this issue. The issue has been briefed and argued. The Court should not stop the parties from agreeing to settle their private coverage dispute and keep it confidential. The private concerns of the parties, however, should not prevent the Court from discharging its public duty to decide the issue.
In my view, this appeal raises issues of substantial public importance and those legal issues should be resolved now. See Nini v. Mercer Cty. Cmty. Coll., 202 N.J. 98, 105 n.4, 995 A.2d 1094 (2010) ("We have often declined ... to dismiss a matter on grounds of mootness, if the issue in the appeal is an important matter of public interest." (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 484, 946 A.2d 564 (2008) ) ). To decide this case, in light of its public importance, would be in line with our past decisions to hear the merits of moot cases that would have a "significant effect" on segments of our population or "continue to divide our courts." Id. at 106 n.4, 107, 995 A.2d 1094 (deciding to interpret the New Jersey Law Against Discrimination's provision that allowed employers to "refus[e] to accept for employment ... any person over 70 years of age" even though the parties settled the case during the pendency of proceedings (quoting N.J.S.A. 10:5-12(a) ); see also Reilly, 194 N.J. at 484-85, 946 A.2d 564 (deciding to interpret N.J.A.C. 11:3-34.3 despite the Court's inability to provide affirmative relief and assurances from the Department of Banking and Insurance that the challenged regulation was being amended "to provide clarity"). Deciding this case is my **375 preferred course of action, and I therefore voted against dismissal of the appeal and remand of the matter.
Further, registering a nay vote on the application is not enough. In light of the public importance of the issue, I find it necessary to address the legal error that should be corrected. I believe that the Appellate Division and trial court erred in categorizing the insurance contract's provisions affecting the minimum mandatory coverage for the dealership's cars as an *208 enforceable step-down clause and not an impermissible escape clause. In my view, it is important to shine a light on flawed legal reasoning that imported the use of a step-down analysis into an analysis of the adequacy of an insurance contract's provisions governing compliance with required minimum mandatory automobile insurance coverage by auto owners. Accordingly, I write in the hope that by highlighting that analytic error, the error will not be perpetuated.
I.
Briefly stated, plaintiff Patricia Engrassia filed this action seeking compensation on behalf of the estate of James Marles. Marles was killed by Erick Uzcategui when Uzcategui struck him while driving a loaner vehicle from Hunterdon BMW (Hunterdon). When Uzcategui took possession of the loaner vehicle, he executed a rental agreement stating that his automobile liability insurance would be primary and the dealership's automobile liability insurance would be secondary.
At the time of the accident, Geico Indemnity Company (Geico) insured Uzcategui with a Family Automobile Insurance Policy having liability limits of $ 100,000 per person and $ 300,000 per accident. Geico accepted coverage for this accident and paid the liability limit of its policy, $ 100,000.
Plaintiff sought to hold Federated Mutual Insurance Company (Federated), Hunterdon's insurer, liable under Hunterdon's garage policy, which had coverage limits of $ 500,000. In New Jersey, automobile dealerships are required by the Motor Vehicle Commission to submit to several requirements in order to be **376 licensed as a motor vehicle dealer, including N.J.A.C. 13:21-15.2(l ) (requiring demonstration of liability insurance in the amounts of $ 100,000 per person/$ 250,000 per incident covering all vehicles owned or operated by a license applicant). It is not disputed that Hunterdon relied on the garage policy in its license submission.
The garage policy includes a provision that excludes Hunterdon customers from coverage unless the customer does not have statutorily required minimum insurance coverage. In those instances, customers are insured under the garage policy, but only up to the "compulsory law limits." This provision is set forth under the insurance contract's section addressing "Who is an Insured." The garage policy defines "insured" as:
2. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
....
(d) Your customers. However, if a customer of yours:
(I) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.
(II) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.
On the key issue that prompts this writing, cross-motions for summary judgment were filed with the trial court. Federated claimed that Uzcategui did not constitute an "insured" under the garage policy. That said, because the clause would have provided Uzcategui coverage if he did not *209 have proper insurance under the New Jersey requirements on his vehicle, Federated claimed that the clause is not an "illegal escape clause," and is therefore enforceable. Plaintiff filed a cross-motion for summary judgment against Federated, arguing that Uzcategui was a permissive user of Hunterdon's vehicle covered under the garage policy and therefore the owner of the vehicle (Federated's insured) was obligated to maintain liability coverage for him. Plaintiff asserted that the language that excluded Uzcategui from coverage constituted an **377 unenforceable "escape clause" and that it should therefore be voided and coverage under the garage policy provided.
The trial court concluded that the clause was not an "illegal escape clause" because it did not deny coverage; rather, it merely limited coverage to the compulsory minimum in New Jersey, which the court identified as the amounts in the omnibus statute, N.J.S.A. 39:6B-1(a) (requiring $ 15,000/$ 30,000 in minimum compulsory automobile liability insurance for private automobiles). Further, the court described the clause as a step-down clause, which is generally permitted under law and thus valid. The court held that Uzcategui was an "insured" under the garage policy subject to the statutory liability limit of $ 15,000, and ordered Federated to pay plaintiff that amount. Both plaintiff and Federated appealed from the trial court's judgment.
An appellate panel affirmed the trial court as to its findings that the "insured" provision was an enforceable step-down provision, but reversed the trial court's remedy that required Federated to pay Uzcategui the $ 15,000 statutory liability minimum. Relying primarily on our decision in Aubrey v. Harleysville Insurance Cos., 140 N.J. 397, 658 A.2d 1246 (1995), the panel determined that the definition of insured in the garage policy was an enforceable "step-down" provision that allowed Federated to avoid covering Hunterdon for the minimum compulsory liability limit for Uzcategui.
II.
In enacting our state's automobile insurance scheme, the Legislature determined that
[e]very owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage ... insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person ... at least in: (1) an amount or limit of $ 15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident[.]
[ N.J.S.A. 39:6B-1(a).]
This Court has noted that the statute evidences a priority of providing certainty in coverage.
**378 Proformance Ins. Co. v. Jones, 185 N.J. 406, 412, 887 A.2d 146 (2005) (citing Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 496, 166 A.2d 345 (1960) ).
Based on the plain language of the statute -- requiring every automobile to be insured by its owner, not its driver -- and the acknowledgement that " 'a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured,' " our Court has adopted the "initial permission rule." Id. at 413, 887 A.2d 146 (quoting Verriest v. INA Underwriters Ins. Co., 142 N.J. 401, 414, 662 A.2d 967 (1995) ).
The initial permission rule arises in settings involving questions about whether coverage is available when accidents occur involving motor vehicle operators "other than the named insured under a standard *210 omnibus clause in a liability insurance policy." Small v. Schuncke, 42 N.J. 407, 412, 201 A.2d 56 (1964). The rule provides that when a driver has
permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile insurance policy.
[ Matits, 33 N.J. at 496-97, 166 A.2d 345.]
In implementing the initial permission doctrine, New Jersey courts have refused to enforce insurance provisions that attempted to circumvent the permissive user rule by excluding categories of permissive users from a policy's minimum mandatory liability coverage -- or, put another way, that used an escape clause. See, e.g., Proformance, 185 N.J. at 416-17, 887 A.2d 146 (collecting cases); Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 366, 374, 225 A.2d 570 (1966) (invalidating an insurance policy provision that excluded coverage for permissive users who used a vehicle outside the scope of the permission given); Willis v. Sec. Ins, Grp., 104 N.J. Super. 410, 414-15, 250 A.2d 158 (Ch. Div. 1968), aff'd, 53 N.J. 260, 250 A.2d 129 (1969).
In Willis, this Court affirmed a Chancery Division opinion that invalidated an insurance provision similar to the one at issue here. Willis had an accident with a vehicle owned by a car dealership, Ruffu Ford, Inc. (Ruffu).
**379 Willis, 104 N.J. Super. at 411, 250 A.2d 158. Willis carried automobile liability insurance that covered him for the statutorily required minimums, but his insurance policy stated that if he was driving a non-owned vehicle, his insurance would be treated as excess to any insurance available from the non-owned vehicle. Id. at 411-12, 250 A.2d 158. Ruffu's policy excluded coverage for permissive users with "available valid and collectible insurance under their own policies" meeting statutory requirements ("Endorsement No. 4"). Id. at 412, 250 A.2d 158.
The court found Endorsement No. 4 void as against public policy. Id. at 414-15, 250 A.2d 158. It emphasized that the statutory omnibus requirement was not that an injured party "be covered" to the statutory minimums, but that the owner of a vehicle provide coverage. Id. at 415, 250 A.2d 158 (" N.J.S.A. 39:6-46(a) [the predecessor statute to N.J.S.A. 39:6B-1 ] specifically requires that a policy shall 'insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured[.]' "). Therefore, even if a provision -- like Endorsement No. 4 -- would never leave an injured third party without coverage, it was still in violation of the plain language of the statute.
The language at issue in the Federated policy for Hunterdon closely tracks the illegal escape clause in Endorsement No. 4 in Willis. Instead of creating different limits of insurance for different classes of drivers, the Hunterdon policy entirely eliminates groups of drivers from coverage. While a properly written step-down provision would be logically placed in the "limit of insurance" section of a policy -- as the Federated policy does in its UIM and UM endorsements -- the Hunterdon customer exclusion is placed within the definition of an insured.
Although there are exceptions to the customer exclusion under the "insured" definition, it is still an exclusion. In the instant matter, Uzcategui did not fall within either of those exceptions, and therefore Hunterdon's vehicle was walled off from coverage by Federated for liability to this injured third party.
**380 *211 The operation of this policy provision eviscerates the public policy that all autos be covered for prescribed mandatory minimum liability coverage obtained by their owner for injury to third parties caused by those vehicles. The shifting of responsibility to ensure that an injured party receives from someone -- here the customer (or his insurer) -- the minimum compulsory liability insurance amount does not fulfill the public policy of the compulsory insurance requirement and its related permissive user doctrine. It is nothing other than an invalid, illegal escape clause, attempting to circumvent the initial permission rule.
This conclusion is four-square with the analysis of the Appellate Division in Rao v. Universal Underwriters Insurance Co., 228 N.J. Super. 396, 549 A.2d 1259 (App. Div. 1988). In Rao, the Appellate Division determined that an insurance policy included an escape clause when it stated that:
The portion of the limit applicable to persons or organizations required by law to be an INSURED is only the amount (or amount in excess of any other insurance available to them ) needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE takes place.
[ Id. at 399, 549 A.2d 1259 (emphasis added).]
The panel held that a purported step-down provision that "attempts to preclude coverage entirely because of other [insurance] coverage" available to the driver, "is contrary to the statutory mandate and constitutes an illegal escape clause." Id. at 404, 549 A.2d 1259 (citing Zullo, 48 N.J. 362, 225 A.2d 570 ). In its decision, the panel acknowledged that its holding "may result in a potential doubling of the available minimum statutory coverage because of the amount of other insurance carried by a lessee." Id. at 403, 549 A.2d 1259. But that did not prevent enforcement of the public policy of requiring all owners to maintain compulsory minimum liability coverage for the protection of the public; a crabbed interpretation of the omnibus clause's purpose did not prevail. The policy's illegal escape clause was stricken and the insurer was required to provide the lessee with the legally required compulsory minimum coverage. Id. at 404, 549 A.2d 1259.
**381 The Rao decision reflects the longstanding awareness that the compulsory insurance requirement is part of the overall "safety net" designed by the Legislature to protect all individuals injured in automobile accidents. Id. at 401-02, 549 A.2d 1259. Its analysis dovetails with the principles articulated in Willis. Together, Rao and Willis are the polestars that should have guided the outcome in this matter. Together, they should have led to a conclusion that the disputed provision is an illegal escape clause that cannot be squared with the public policy of this state, which protects injured victims of automobile accidents by placing non-delegable obligations on owners of motor vehicles registered in this state.
III.
In determining that the Hunterdon policy is enforceable as written, the Appellate Division erred in relying on this Court's opinion in Aubrey, 140 N.J. 397, 658 A.2d 1246. Although the Aubrey Court examined an automobile insurance policy with a similarly worded provision, the Appellate Division's reliance is misplaced.
Aubrey was injured in a car accident while driving a loaner vehicle from Harleysville, a dealership. Id. at 400-01, 658 A.2d 1246. After settling her claims with the other drivers, she was still not fully reimbursed for her injuries. Id. at 400, 658 A.2d 1246. Aubrey had underinsured motorist *212 (UIM) coverage[1] for $ 15,000, but that coverage was unavailable because she had already collected $ 40,000 from the other parties. Ibid. Therefore she attempted to collect UIM benefits using Harleysville's policy, which had liability limits of $ 1,000,000. Ibid.
The Harleysville insurance policy had a similar provision to the Hunterdon policy, precluding customers from coverage unless **382 they did not have insurance meeting the legally required minimums. Id. at 401, 658 A.2d 1246. The Court did not explicitly invalidate the insurance provision, but instead read it to limit Aubrey's liability coverage, and by extension her UIM coverage, to $ 15,000 -- the legal minimum. Id. at 406, 658 A.2d 1246 ("[T]he step-down clause limits liability coverage for a customer to the statutory minimum, $ 15,000. Under the parity provision of N.J.S.A. 17:28-1.1(b), Aubrey's right to recover underinsured benefits would be limited to that amount.").
The Court's actions in Aubrey did not implicitly overrule Willis, and the case's facts are importantly distinguishable from those here. The Aubrey Court did not find the "insured" definition enforceable as it pertained to legally mandated liability insurance, but instead dealt with UIM insurance -- an optional form of first-party insurance. The questions before the Court did not implicate an automobile owner's legally mandated insurance requirements, nor the permissive user, step-down, or escape clause doctrines that have since flowed from those requirements. It is an inappropriate basis upon which to dispose of the instant matter. Its reasoning was extended beyond its facts and logic to achieve a result in this matter that is contrary to public policy.
IV.
For the reasons explained above, the Hunterdon policy, in my view, contains an illegal "escape clause" and is unenforceable. As established by Willis and Rao, the proper next step is to reform the offending provision so that the policy complies with the legally required minimums. While past cases have applied the $ 15,000 minimum established by N.J.S.A. 39:6B-1(a), the instant case presents an additional question of public importance: whether N.J.A.C. 13:21-15.2, which governs the application process for dealership licenses, establishes a higher legally required minimum for dealership insurance policies.
**383 The New Jersey Motor Vehicle Commission (the Commission) enacted a regulation requiring that, before a dealership license is issued, the applicant must
submit a certificate of insurance demonstrating liability insurance covering all vehicles owned or operated by the applicant, at his or her request or with his or her consent. This insurance shall be in the amount of $ 100,000 per person per incident up to $ 250,000 per incident for bodily injury or death, $ 25,000 per incident for property damage, and $ 250,000 combined personal injury and property damage per incident. This insurance shall be renewed as necessary to ensure that it remains valid for the entire prospective license term.
[ N.J.A.C. 13:21-15.2(l ).]
During the Notice and Comment period, the Commission received several comments alleging that the insurance limits *213 required were prohibitively expensive, and questioning the Commission's authority to enact a regulation that increased a dealership's requirements beyond those stated in N.J.S.A. 39:6B-1. 38 N.J.R. 1324(a). The Commission responded that the regulation was within its authority because it "is entrusted to enforce the law concerning the conduct of automobiles dealers in order to regulate the purchase and sale of motor vehicles." Ibid. Regarding the cost of the increased insurance, the Commission acknowledged that this would impose some hardship onto dealerships, but that
the exposure occasioned by the proliferation of dealer plates and the use of those plates by what are essentially unknown quantities required increased protection more in line with current economic realities, which is directly related to the public welfare....
While the Commission is not insensitive to the effect of increased costs on the dealer, as a matter of simple fairness, the costs of injuries to third parties should be borne by the commercial entity who benefits by the use and sale of the vehicle and not by the innocent victim of an accident in which that vehicle may be involved. The Commission, therefore, declines to amend the rules to impose on motor vehicles dealers the requirements ... which apply only to private passenger automobiles and not to dealership inventory.
[Ibid. ]
In my view, the Commission clearly and explicitly indicated that N.J.A.C. 13:21-15.2(l ) was expressly intended to increase the legally required minimums of insurance for permissive users of dealership owned cars. That policy choice is a logical application of the animating principles of the initial permission rule and the illegality **384 of escape clauses. The case law is clear: an insurance policy cannot contract around its mandated duty to the public to maintain minimum limits of insurance on owned vehicles through escape clauses. In my view, there is no reason that an increase of that minimum limit -- instituted in light of the heightened risk posed by the automobiles involved -- would alter that long-held stance.
To the extent that Federated suggests that the Commission was not within its power to enact this regulation, I note only that at oral argument Federated conceded that it never challenged the regulation when it was enacted or during this litigation. Moreover, it does not appear that any other entity has challenged the regulation since its enactment. Absent a valid challenge to the regulation's enforceability, this Court should not interpret the legally required insurance minimum -- to which an invalid insurance policy provision should be reformed -- to fall below the representations of coverage the dealership is required to provide in order to be licensed to do business in this state.

UIM coverage will pay its insured, if a non-fault driver, for the discrepancy between the payment received from an at-fault driver's policy and the UIM policy limit of the first-party insured. A policy's UIM limit cannot exceed its general liability limit. N.J.S.A. 17:28-1.1(b).