SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.*

**Tyrone A. Huggins v. Mary E. Aquilar (A-78-19) (084200)**

**Argued January 20, 2021 -- Decided April 21, 2021**

**LaVECCHIA, J., writing for the Court.**

In this appeal, the Court considers whether the insurer on a car dealership's auto insurance policy, referred to as a garage policy, can deny coverage for an entire class of permissive users of the dealership's loaner vehicles notwithstanding the compulsory bodily injury liability coverage required for all vehicles owned or used by a dealership.

In September 2016, defendant Trend Motors, Ltd. (Trend), provided defendant Mary Aquilar with a loaner vehicle for her personal use while her vehicle was being serviced. Aquilar's negligent operation of the loaner vehicle caused it to strike plaintiff Tyrone A. Huggins's car. Huggins sustained serious injuries as a result. GEICO insured Aquilar through an automobile policy that provided liability coverage of $15,000 per person and $30,000 per incident, the minimum statutory limits. Trend held a garage policy with Federal Insurance Company (Federal) that insured Trend's vehicles for up to $1,000,000 in liability coverage. The definition of an "insured" in Paragraph 3(a)(2)(d) of the Federal policy purports to extend liability coverage to Trend's customers using Trend's vehicles only if the customer lacks the minimum insurance required by law.

Huggins filed a complaint seeking compensation for the injuries and loss of income he suffered as a result of the accident. Federal disclaimed liability, arguing that Aquilar did not fit the policy's definition of an insured because she held $15,000 in bodily injury coverage through GEICO. The trial court held that the Federal policy's definition of an insured constituted an illegal escape clause and held Federal to the full policy limit of $1,000,000 in liability coverage.

The Appellate Division declined to review the trial court's ruling. The Court granted Federal's motion for leave to appeal. 242 N.J. 512 (2020).

**HELD:** The disputed coverage provision in the garage policy at issue constitutes an illegal escape clause, which may not be used to evade the minimum liability requirements for dealership vehicles set by the Chief Administrator of the Motor Vehicle Commission (MVC). The Court orders the reformation of Federal's policy to the $100,000/$250,000 dealer-licensure minimum liability coverage required by N.J.A.C. 13:21-15.2(*l*).

1

1.  Per N.J.S.A. 39:6B-1(a), every owner of a motor vehicle must maintain liability insurance coverage in the amounts of at least $15,000 per person and $30,000 per accident.  The statutory requirement that every automobile be insured by its owner, not its driver, is foundational to the permissive user rule, which provides liability coverage when vehicles are operated by a person, other than the named insured, who has permission to use a motor vehicle.  Insurance policy provisions that exclude categories of permissive users from the policy's mandatory minimum liability coverage constitute illegal and unenforceable escape clauses.  The Court finds Willis v. Security Insurance Group, 104 N.J. Super. 410 (Ch. Div. 1968), aff'd, 53 N.J. 260 (1969), particularly instructive.  In that case, the Chancery Division invalidated a provision in a car dealership's garage policy that excluded coverage for permissive users of the insured's car who had their own automobile coverage meeting minimum limits.  That principle was followed by the Appellate Division in Rao v. Universal Underwriters Insurance Co., 228 N.J. Super. 396 (App. Div. 1988), when it held that an automobile leasing company's insurance policy, which provided coverage to lessees only to the extent that they lacked their own minimum liability coverage, was an invalid escape clause.  (pp. 10-14)

2.  The MVC requires, as a condition of licensure, that every automobile dealership possess liability insurance in the amount of $100,000 per person and $250,000 per incident "covering all vehicles owned or operated by the applicant, at his or her request or with his or her consent."  N.J.A.C. 13:21-15.2(*l*).  The impact of this requirement on dealerships, with its demand for higher liability insurance coverage than is generally required under N.J.S.A. 39:6B-1(a), was known, considered, and not altered by the Chief Administrator of the MVC when the requirement was adopted.  The regulation's specific requirement that coverage extend to vehicles "owned or operated by the applicant, at his or her request or with his or her consent" demonstrates a clear intent that permissive users be insured.  The Court canvasses relevant law and takes notice of other instances where certain vehicles are required to maintain higher compulsory liability insurance than is called for under N.J.S.A. 39:6B-1(a).  (pp. 15-18)

3.  Examination of Federal's policy provision concerning "who is an insured" reveals ineluctably that it contains an impermissible escape clause.  Federal's policy excludes liability coverage to all Trend customers who have personal insurance meeting the compulsory statutory minimum.  However, because N.J.S.A. 39:6B-1(a) requires car "owner[s]" to carry insurance rather than drivers, Trend -- as owner of the loaner vehicle -- was obligated to provide compulsory liability insurance for accidents in which Trend's car was involved when Aquilar, a permissive user, was driving it.  While a step down in coverage has been approved for first-party underinsured motorist (UIM) coverage, as in Aubrey v. Harleysville Insurance Cos., 140 N.J. 397 (1995), it has not been approved with respect to third-party liability coverage to accident victims.  Paragraph 3(a)(2)(d) is not a valid step-down clause because it does not merely limit the first-party coverage provided by Trend to already-insured drivers of their loaner vehicles, it "except[s]" from coverage accidents involving an owned vehicle used by such permissive users.  Although

<u>Aubrey</u> found that a similarly worded liability provision was a valid step-down clause, that holding came in the context of UIM benefits. <u>Aubrey</u> was not tasked with construing N.J.S.A. 39:6B-1(a), which mandates liability insurance of "owner[s]." Lawful exceptions to discretionary insurance coverage do not raise the same concerns as efforts to evade minimum insurance requirements set by law. (pp. 19-21)

4. On the question of remedy, the two most relevant cases on reformation of an insurance policy are <u>Proformance Insurance Co. v. Jones</u>, 185 N.J. 406 (2005), and <u>Potenzone v. Annin Flag Co.</u>, 191 N.J. 147 (2007). In <u>Proformance</u>, the Court struck a provision in an auto insurance policy that purported to exclude liability coverage for a permissive user who caused a vehicle collision while engaged in "business pursuits." The Court held that the policy should be reformed to the compulsory statutory minimum instead of applying the policy's stated limit. In <u>Potenzone</u>, the Court reached the opposite conclusion, reforming an offending business auto insurance policy to the stated policy limit. The provision at issue in <u>Potenzone</u> excluded liability coverage for workplace injuries that occurred "while moving property to or from a covered auto" -- an exclusion the insurer conceded was not enforceable under case law. The Court distinguished <u>Proformance</u> on the basis that the offending business-pursuits clause was an otherwise valid business exclusion, and it was the first time the Court invalidated a business exclusion of that nature. In <u>Potenzone</u>, the offending provision violated the holding in a case that had been decided sixteen years earlier; the insurance industry had ample time to adjust its rates and policy terms but failed to do so, and so the Court imposed the policy limit. (pp. 21-24)

5. The <u>Proformance</u>/<u>Potenzone</u> dichotomy requires consideration of whether case law provided sufficient notice to an insurer that its policy provision was unlawful. It is difficult to conclude that Federal had sufficient notice to warrant imposing the full policy limit in light of the arguably diverging decisions in <u>Rao</u> and <u>Aubrey</u>. The Court finds this case to be closer to <u>Proformance</u> than <u>Potenzone</u>. <u>Rao</u> provided notice of Paragraph 3(a)(2)(d)'s illegality when it invalidated a similar policy exclusion. <u>Aubrey</u> construed a liability exclusion nearly identical to Paragraph 3(a)(2)(d) to be a valid step-down clause. Although <u>Aubrey</u> arose in the context of first-person coverage under UIM, given <u>Aubrey</u>'s arguably contrary reading of a similar provision, it cannot be said that Federal should have "reasonably expected" that its provision would be found to be unlawful and that it would be held to the full limit of its coverage. Instead, Federal must comply with the minimum liability coverage required for all vehicles owned or used by a dealership: $100,000/$250,000 in bodily injury. Of course, the Court's decision today puts issuers of garage policies on notice that similar escape clauses are unlawful. (pp. 24-26)

      **AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.**

SUPREME COURT OF NEW JERSEY
A-78 September Term 2019
084200

Tyrone A. Huggins,

Plaintiff-Respondent,

v.

Mary E. Aquilar, Trend,

Defendants,

and

New Jersey Manufacturers Insurance Company,

Defendant-Respondent,

and

Federal Insurance Company,

Third-Party Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

Argued                    Decided
January 20, 2021          April 21, 2021

Selina M. Ellis argued the cause for appellant (Walsh
Pizzi O'Reilly Falanga, attorneys; Selina M. Ellis, Liza
M. Walsh, and Marc D. Haefner, on the brief).

1

John V. Mallon argued the cause for respondent New Jersey Manufacturers Insurance Company (Chasan Lamparello Mallon & Cappuzzo, attorneys; John V. Mallon, of counsel and on the brief, Kelly A. Weber, of counsel, and Ryan J. Gaffney, on the brief).

Joseph A. Siclari argued the cause for respondent Tyrone A. Huggins (The Law Offices of Patrick G. Patel, attorneys; Joseph A. Siclari, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

As a condition of "engag[ing] in the business of buying, selling or dealing in automobiles" in New Jersey, a license must be obtained from the Motor Vehicle Commission (MVC) on terms established by the MVC Chief Administrator. N.J.S.A. 39:10-19. Among the requirements for licensure established by the Chief Administrator is proof "demonstrating liability insurance covering all vehicles owned or operated by the applicant, at his or her request or with his or her consent" in coverage amounts for bodily injury or death "of $100,000 per person per incident up to $250,000 per incident." N.J.A.C. 13:21-15.2(*l*).

In this matter, a dealership held insurance, referred to as a garage policy, that avoided that licensure requirement by eliminating coverage for a class of its customers. One such customer was involved in an accident with a third party while operating a dealership-owned vehicle. The issue is whether the

2

insurer on the garage policy can deny responsibility for an entire class of permissive users of the dealership's loaner vehicles notwithstanding the compulsory bodily injury liability coverage required for all vehicles owned by the dealership.

This issue arose and evaded review in an earlier matter brought before this Court. See Engrassia v. Uzcategui, 237 N.J. 373, 373 (2019). For reasons similar to those expressed in a dissent to the Court's dismissal of that appeal as mooted by the parties' post-argument resolution of the litigation, see id. at 374-84 (LaVecchia, J., dissenting), the trial court in the instant matter held that the terms of the garage policy avoided the dealership's obligation to provide bodily injury insurance coverage for the vehicles it owned and lent to its customers; the relevant provision thus constituted an illegal and unenforceable escape clause. The trial court held the insurer to the full limit of contracted-for liability coverage -- an amount well in excess of the MVC's compulsory amount. The Appellate Division declined to review the trial court's ruling, but we granted leave and heard the appeal.

We now hold that the disputed coverage provision in the garage policy at issue constitutes an illegal escape clause, which may not be used to evade the minimum liability requirements for dealership vehicles set by the Chief Administrator of the MVC. For reasons expressed herein, we affirm the

3

judgment of the trial court with modification as to the amount of compulsory coverage required in these circumstances.

I.

A.

On September 6, 2016, Mary Aquilar brought her car in for maintenance by Trend Motors, Ltd. (Trend). The service required that Trend keep the car for several days, so Trend provided Aquilar with a complimentary loaner vehicle for her personal use while her vehicle was being serviced. Aquilar signed Trend's loaner-vehicle form agreement, which included a provision stating that Aquilar was not covered by any insurance policy held by Trend.

Several days into her use of that loaner vehicle, on September 14, 2016, Aquilar and a vehicle driven by plaintiff Tyrone A. Huggins were passing through the intersection of 14th Street and Garden Street in Hoboken. Aquilar's concededly negligent operation of the loaner vehicle caused it to strike Huggins's car. Huggins sustained serious injuries as a result.

At the time of the accident, GEICO insured Aquilar through an automobile policy that provided liability coverage of $15,000 per person and $30,000 per incident, the minimum limits established under N.J.S.A. 39:6B-1(a). See also N.J.S.A. 39:6A-3. Huggins held an automobile insurance policy with defendant and third-party plaintiff New Jersey Manufacturers

4

Insurance Company (NJM) that provided uninsured motorist (UM) and underinsured motorist (UIM) coverage up to $100,000 per incident.

Trend held a garage policy with Federal Insurance Company (Federal) that insured Trend's vehicles for up to $1,000,000 in liability coverage.

As noted, the MVC requires, as a condition of licensure, that every automobile dealership demonstrate possession of liability insurance, in the amount of $100,000 per person and $250,000 per incident, covering "all vehicles owned or operated by the applicant, at his or her request or with his or her consent." N.J.A.C. 13:21-15.2(*l*). Despite the blanket disclaimer of insurance coverage in Trend's loaner agreement, the Federal policy addressed coverage for customers in certain situations. Those provisions supplied, within the Liability Coverage Section of Trend's Federal policy, the following definition of an insured (entitled "Who Is An Insured"):

> a. The following are "insureds" for covered "autos":
>
> . . . .
>
> (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> . . . .
>
> (d) Your customers. However, if a customer of yours:
>
> (i) Has no other available insurance (whether primary, excess or contingent), they are an

"insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

[Hereinafter referred to as Paragraph 3(a)(2)(d) of the policy.]

According to those terms, Federal's policy purports to extend liability coverage to Trend's customers using Trend's vehicles only if the customer lacks the minimum insurance required by law, and the policy covers those customers only to the extent necessary to establish that unspecified minimum insurance level.

B.

On June 14, 2017, Huggins filed a complaint in the Law Division of Superior Court in Hudson County seeking compensation for the injuries and loss of income he suffered as a result of the accident. Huggins's complaint named Trend and Aquilar as defendants. On July 6, 2018, Huggins amended his complaint to name his personal insurer NJM as a defendant, seeking UIM coverage for any damages exceeding the $15,000 in coverage provided by

6

Aquilar's GEICO policy.  GEICO accepted coverage under its automobile policy for Aquilar and deposited $15,000 in liability coverage with the Law Division on behalf of its insured, Aquilar.

NJM answered and filed a third-party complaint against Federal.  NJM's complaint sought a declaration that Federal's policy covered Aquilar's third-party liability to Huggins.  Federal and NJM filed cross-motions for summary judgment on whether Aquilar's third-party liability to Huggins was covered under the garage policy.  Federal disclaimed liability, arguing that Aquilar did not fit the policy's definition of an insured because she held $15,000 in bodily injury coverage through GEICO, meeting the minimum amount of insurance required under law by N.J.S.A. 39:6B-1(a).  See also N.J.S.A. 39:6A-3.

NJM argued that Aquilar was a permissive user under the Federal policy and that the dealership was obligated, as the owner of the vehicle, to maintain liability coverage for her when she was driving one of its vehicles.  NJM maintained that because the Federal policy's definition of an insured excluded Aquilar based on her personal coverage, it acted as an unenforceable "escape clause" that should be voided as a matter of law -- a position with which Federal disagreed, claiming it was a permissible step-down provision as allowed in Aubrey v. Harleysville Insurance Cos., 140 N.J. 397 (1995).

7

The trial court agreed with NJM and held that the insurance policy's definition of an insured constituted an illegal escape clause because the definition operated to eliminate coverage for a class of permissive drivers of the dealership's vehicles, namely, Trend customers who maintained personal automobile insurance that met statutory requirements. Because the Federal policy entirely excluded Aquilar due to her minimum personal bodily injury coverage, the court believed it failed to comply with the public policy of requiring all vehicle owners to provide the applicable minimum coverage for permissive users. In so holding, the trial court relied on Willis v. Security Insurance Group, 104 N.J. Super. 410 (Ch. Div. 1968), aff'd, 53 N.J. 260 (1969), as well as Rao v. Universal Underwriters Insurance Co., 228 N.J. Super. 396 (App. Div. 1988). The court's analysis tracked the reasoning expressed in the dissent to the dismissal of the appeal in Engrassia, 237 N.J. at 380-84, which it found persuasive.

Concluding that the policy's definition of an insured as applied to Aquilar was an illegal escape clause, the court turned to the question of the amount of coverage to be provided under the policy. Reasoning that it was not the role of the court to rewrite the policy, the trial court held that the policy provided Aquilar with the policy limit of $1,000,000 in liability coverage. Accordingly, the court granted summary judgment to NJM and dismissed it

8

from the case because the Federal policy exceeded the $100,000 limit of NJM's UIM coverage.

Federal filed a motion for reconsideration, arguing that the trial court erred in declining to reform the Federal policy, citing Proformance Insurance Co. v. Jones, 185 N.J. 406 (2005), and Potenzone v. Annin Flag Co., 191 N.J. 147 (2007). In rejecting that argument, the trial court applied the standard for reformation from those cases and concluded that Federal was on notice of the illegality of the escape clause in its policy in light of the earlier decisions in Willis and Rao. Thus, interpreting Potenzone to require that the full policy limit be enforced, the court left unchanged its original order imposing the $1,000,000 insurance policy limit.

Federal filed a motion for leave to appeal to the Appellate Division, which NJM and Huggins opposed. On February 11, 2020, the Appellate Division denied the motion. Federal then filed for leave to appeal to this Court, and we granted the motion. 242 N.J. 512 (2020).[1] The parties' arguments before this Court are, in essence, those advanced before, except where noted in this opinion.

---

[1] This Court's order granting Federal's appeal incorrectly recites Ms. Aquilar's surname as "Aguilar". We apologize to Ms. Aquilar for this error.

9

II.

A.

Simply stated, this case concerns the compulsory liability insurance requirement imposed on vehicles, through their owners, in order to provide compensation for injury from accidents involving those vehicles.[2] The legislative policy in this area is straightforward.

Per the plain language of N.J.S.A. 39:6B-1(a), "[e]very owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage" in the amounts of at least $15,000 per person and $30,000 per accident to insure against liability for bodily injury, death, and property damages sustained by a victim of an accident involving that vehicle. The statute's certainty girds the strength of the liability safety net devised by the legislative insurance scheme for victims of automobile accidents. See Proformance, 185 N.J. at 412.

Further, the statutory requirement that every automobile be insured by its owner, not its driver, is foundational to the permissive user rule. See id. at 413. That rule is based on the principle that "a liability insurance contract is for the benefit of the public as well as for the benefit of the named or

---

[2] Throughout this opinion, we draw heavily from the analysis expressed in the dissent in Engrassia, without quoting or providing express attribution each time.

10

additional insured." <u>Verriest v. INA Underwriters Ins. Co.</u>, 142 N.J. 401, 414 (1995) (quoting <u>Odolecki v. Hartford Acc. & Indem. Co.</u>, 55 N.J. 542, 549 (1970)). The permissive user rule developed in settings where coverage under a standard automobile liability insurance policy is questioned due to the vehicle's operation by a person other than the named insured. <u>Small v. Schuncke</u>, 42 N.J. 407, 412 (1964). Generally stated, the rule provides for coverage under the standard omnibus liability clause of an auto policy, presently required under N.J.S.A. 39:6B-1(a), when a driver has "permission to use a motor vehicle in the first instance, [and] any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, [remains] a permissive use." <u>Matits v. Nationwide Mut. Ins. Co.</u>, 33 N.J. 488, 496-97 (1960).

Our Court has used the permissive driver rule to prohibit circumvention of public policy -- a policy that provides a safety net of third-party coverage through compulsory liability insurance. Insurance policy provisions that disclaim whole classes of drivers are problematic, and often found violative of public policy, when they exclude categories of permissive users from the policy's mandatory minimum liability coverage. <u>See</u> <u>Proformance</u>, 185 N.J. at 416-17 (collecting cases); <u>Selected Risks Ins. Co. v. Zullo</u>, 48 N.J. 362, 366 (1966). Such exclusions constitute illegal and unenforceable escape clauses.

11

The facts and holding of Willis are particularly instructive.  In Willis, this Court affirmed, 53 N.J. 260, a Chancery Division decision that had invalidated a car dealership's garage policy that "exclude[d] from its omnibus clause individuals driving the insured's car with his permission where such persons have available valid and collectible insurance under their own policies with the minimum limits."  104 N.J. Super. at 412.  Plaintiff Willis got into an accident while he was test driving a car owned by a car dealership, Ruffu Ford, Inc., with the permission of the dealer's general manager.  Id. at 411.  Willis's insurer, Allstate, contended that Willis was covered by Ruffu's garage liability policy, issued by defendant Security Insurance Group, and that Allstate was therefore responsible for excess coverage only.  Id. at 412.  But Security claimed it was not responsible for providing liability coverage because the garage policy excluded coverage for permissive users of the insured's car who had their own automobile coverage meeting minimum limits.  Ibid.

The Chancery Division found the policy's coverage exclusion invalid as a matter of public policy.  Id. at 414-15.  The court reasoned from the earlier decision by this Court in Zullo "that 'there may be no departure from the omnibus coverage described in section 46 of the Security-Responsibility Act.'"  Id. at 415 (quoting Zullo, 48 N.J. at 374).  The court noted that N.J.S.A. 39:6-46(a), the predecessor to N.J.S.A. 39:6B-1, "specifically requires that a policy

12

shall 'insure the insured named therein <u>and any other person</u> using or responsible for the use of any such motor vehicle with the express or implied consent of the insured.'" <u>Ibid.</u> Thus, the Chancery Division declared invalid the garage policy provision excluding coverage for permissive users having their own liability coverage and held defendant Security Insurance Group primarily liable for the coverage. <u>Ibid.</u>

The statutory omnibus requirement at issue in <u>Willis</u> was not that an injured party be covered to the statutory minimums, but that the owner of a vehicle provide coverage. <u>Id.</u> at 414-15. Therefore, even if a provision -- like the provision disputed in <u>Willis</u> -- would never leave an injured third party without coverage, it was still in violation of the plain language of the statute.

That principle was followed by the Appellate Division in <u>Rao</u>. In that case, the Appellate Division held that an automobile leasing company's insurance policy, which provided coverage to lessees only to the extent that they lacked their own minimum liability coverage, was an invalid escape clause. 228 N.J. Super. at 404. Plaintiff Anita Rao struck a pedestrian while driving a car leased by her husband, Naveen Rao, from defendant Open Road Leasing Company (Open Road). <u>Id.</u> at 398. Mr. Rao had a personal automobile liability insurance policy from Allstate, pursuant to the

requirements of the lease agreement with Open Road.  Ibid.  The Raos sought

coverage under Open Road's insurance policy, which stated that

> [t]he portion of the limit applicable to persons or organizations required by law to be an INSURED is only the amount (or amount in excess of any other insurance available to them) needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE takes place.
>
> [Id. at 399.]

The Appellate Division examined N.J.S.A. 45:21-1 to -3, which govern

mandatory omnibus liability coverage of rental vehicles.  Id. at 400-01.

Specifically, N.J.S.A. 45:21-2 requires every "owner" of a vehicle for rent or

lease to maintain liability insurance.  Id. at 400.  The court construed N.J.S.A.

45:21-1 to -3 as requiring "an 'owner[]' to 'provide' a liability policy of

insurance for the statutorily mandated minimum of $15,000/$30,000 regardless

of whether any 'lessee or bailee, his agent or servant' otherwise procures and

maintains such insurance."  Id. at 403.  The court found the "potential doubling

of the available minimum statutory coverage because of the amount of other

insurance carried by a lessee . . . to be irrelevant," ibid., and held that to the

extent the policy's language "attempts to preclude coverage entirely because of

the other . . . coverage secured by the Raos in compliance with the leasing

agreement, it is contrary to the statutory mandate and constitutes an illegal

escape clause," id. at 404 (citing Zullo, 48 N.J. 362).

14

B.

The instant matter is complicated by the heightened compulsory liability insurance coverage imposed by the Chief Administrator of the MVC.

N.J.S.A. 39:10-19 requires all persons "engage[d] in the business of buying, selling or dealing in motor vehicles" to first obtain a dealership license from the MVC. The same statute authorizes the MVC's Chief Administrator to license a proper person "upon application in such form as the [C]hief [A]dministrator prescribes." Ibid. To implement that statutory responsibility, the Chief Administrator promulgated N.J.A.C. 13:21-15.2, which governs the procedures and requirements for obtaining a license. In pertinent part, subsection (*l*) of that regulation requires that the applicant,

> [a]t some time during the application process prior to licensure, . . . submit a certificate of insurance demonstrating liability insurance covering all vehicles owned or operated by the applicant, at his or her request or with his or her consent. This insurance shall be in the amount of $100,000 per person per incident up to $250,000 per incident for bodily injury or death, $25,000 per incident for property damage, and $250,000 combined personal injury and property damage per incident. This insurance shall be renewed as necessary to ensure that it remains valid for the entire prospective license term.
>
> [N.J.A.C. 13:21-15.2(*l*).]

When proposed as a requirement of licensure, that provision was met with objection from within the regulated industry. During the notice and

15

comment period before promulgation of N.J.A.C. 13:21-15.2(*l*), a commenter raised a concern that the proposed regulation would increase costs on small auto dealers;[3] the commenter also specifically questioned the alteration of the minimum liability insurance requirement terms established by N.J.S.A. 39:6A-3 and :6B-1. The Commission responded that,

> while it is undisputed that automobile insurance costs . . . are still uncomfortably high, the exposure occasioned by the proliferation of dealer plates and the use of those plates by what are essentially unknown quantities requires increased protection more in line with current economic realities, which is directly related to the public welfare. If industry experience did not include claims in excess of current coverages there would be no increased cost associated with higher limits. Inasmuch as insurance costs are directly related to pay-outs, however, the fact that the risks are substantial cannot be ignored.
>
> While the Commission is not insensitive to the effect of increased costs on the dealer, as a matter of simple fairness, the costs of injuries to third parties should be borne by the commercial entity who benefits by the use and sale of the vehicle and not by the innocent victim of an accident in which that vehicle may be involved. The Commission, therefore, declines to amend the rules to impose on motor vehicle dealers the requirements of N.J.S.A. 39:6A[] and 39:6B[], which apply only to private passenger automobiles and not to dealership inventory. (See N.J.S.A. 39:6A-2 [(defining "automobile")].)
>
> [38 N.J.R. 1324(a), response to cmt. 25 (Feb. 6, 2006).]

---

[3] The commenter noted, "[c]urrently dealers are required to carry insurance of only $35,000 per incident per person, at a cost of $7,500. Tripling the insurance coverage will double the cost of the coverage."

16

It is plain that the impact of this requirement, with its demand for higher liability insurance coverage than is generally required under N.J.S.A. 39:6B-1(a), was known, considered, and not altered by the Chief Administrator when the requirement was adopted. The regulation's specific requirement that coverage extend to vehicles "owned or operated by the applicant, at his or her request or with his or her consent" demonstrates a clear intent that permissive users be insured.

It is also noteworthy that this is not the only instance of higher compulsory minimum liability coverage for certain vehicles on the road in New Jersey. A canvassing of relevant law reveals several examples, of which we take notice.

Some higher amounts of required liability coverage are set by statute. For example, transportation network company drivers must maintain liability insurance of $50,000/$100,000. N.J.S.A. 39:5H-10(b). An owner of limousines must maintain liability insurance of $1,500,000. N.J.S.A. 48:16-14. Motor vehicles used to carry passengers for hire must maintain liability coverage in amounts set by a schedule, but far in excess of the $15,000/$30,000 limit identified in N.J.S.A. 39:6B-1(a). N.J.S.A. 48:4-47.

Other required amounts of higher liability coverage have been imposed by regulation pursuant to statutory authorization. For example, N.J.S.A.

17

48:13A-7.22 authorizes the Board of Public Utilities (BPU) to establish, through rules and regulations, uniform bid specifications for municipal solid waste collection contracts. The BPU promulgated N.J.A.C. 7:26H-6.17(a), which requires contractors with winning bids for municipal solid waste collection contracts to maintain, among other forms of insurance, automobile liability insurance in the amount of $500,000/$1,000,000. Similarly, the Director of the Division of Consumer Affairs is authorized to establish requirements for movers' and warehousemen's services, N.J.S.A. 45:14D-6, and so adopted N.J.A.C. 13:44D-4.7(b), requiring such practitioners to maintain automobile liability coverage in minimum amounts of $25,000/$100,000 for bodily injury. And the Commissioner of Health promulgated N.J.A.C. 8:40-3.3(c)(1), requiring ambulance service providers to maintain automobile liability insurance of at least $500,000 per occurrence for combined bodily injury/property damage coverage for each vehicle.

Thus, there are numerous examples where the law requires certain vehicles to maintain higher compulsory liability insurance than is called for under N.J.S.A. 39:6B-1(a).

Examination of the relevant parts of Federal's policy provision concerning "who is an insured" reveals ineluctably that it contains an impermissible escape clause.

Federal's policy excludes liability coverage to all Trend customers who have personal insurance meeting the compulsory statutory minimum. However, because N.J.S.A. 39:6B-1(a) requires car "owner[s]" to carry insurance rather than drivers, Trend -- as owner of the loaner vehicle -- was obligated to provide compulsory liability insurance for accidents in which Trend's car was involved when Aquilar, who was its permissive user, was driving it. See N.J.S.A. 39:6B-1(a); Rao, 228 N.J. Super. at 403 (construing N.J.S.A. 45:21-2 similarly); Willis, 104 N.J. Super. at 415 (construing N.J.S.A. 39:6-46(a) similarly).

The Federal policy creates an exclusion from compulsory insurance for vehicles based on a class of permissive motorists to which Aquilar belongs and -- if the exclusion passed muster -- would excuse Federal from providing liability coverage to third parties injured in accidents. Yet N.J.S.A. 39:6B-1(a) imposes the obligation to provide liability coverage on owners of vehicles, an obligation animated by the Legislature's protective intent in adopting a safety-net regime of insurance. See also N.J.S.A. 39:6A-3. While a step down in

coverage has been approved in the setting of eligibility for first-party UIM coverage, as in Aubrey, it has not been approved with respect to third-party liability coverage to accident victims.

Paragraph 3(a)(2)(d), by its terms, does not merely limit the first-party coverage provided by Trend to already-insured drivers of their loaner vehicles who carry at least $15,000 in their own personal auto insurance. Instead, it "except[s]" from coverage accidents involving an owned vehicle used by such permissive users. In other words, it excuses coverage of such accidents entirely. Accordingly, it is not a valid step-down clause but is, rather, an unlawful escape clause. See Rao, 228 N.J. Super. at 404; Willis, 104 N.J. Super. at 415.

That Huggins would be able to recover the N.J.S.A. 39:6B-1(a) statutory minimum through Aquilar's personal automobile policy for his liability claims does not relieve Trend of its duty, as the owner of the loaner vehicle, to provide compulsory liability insurance on the vehicle when it is driven by Aquilar as a permissive user of Trend's vehicle. See N.J.S.A. 39:6B-1(a). The shifting of responsibility from owner to driver does not fulfill the public policy of the compulsory insurance requirement and its related permissive user doctrine. Cf. Rao, 228 N.J. Super. at 403 (finding "a potential doubling of the available minimum statutory coverage" to be "irrelevant" because "[N.J.S.A.

20

45:21-1 to -3] do[] not allow for any escape in coverage by such an owner"). It is significant that Rao is cited approvingly in the Aubrey decision, on which Federal relies. See 140 N.J. at 407-08.

More importantly, Aubrey is meaningfully distinguishable. Although Aubrey found that a similarly worded liability provision was a valid step-down clause, that holding came in the context of UIM benefits and only indirectly discussed liability coverage via the parity requirement of N.J.S.A. 17:28-1.1(b). See 140 N.J. at 405-08. Aubrey was not tasked with construing N.J.S.A. 39:6B-1(a), which mandates liability insurance of "owner[s]." Ibid. Lawful exceptions to discretionary insurance coverage do not raise the same concerns as efforts to evade minimum insurance requirements set by law.

In sum, the trial court correctly declared Paragraph 3(a)(2)(d) of Federal's policy an invalid escape clause because it attempts to exclude from the duty to provide liability coverage cars owned by Trend that are involved in accidents when driven by Trend customers who have personal insurance of at least $15,000. The trial court acted appropriately in striking the provision as unenforceable because it operates as an escape clause.

IV.

On the question of remedy, the parties advance differing positions about reformation of the contract. The trial court declined to reform the contract to a

21

mandatory minimum and instead held Federal to the full amount of the policy on its face, namely $1,000,000 in liability coverage.

A.

The two most relevant cases on reformation of an insurance policy are Proformance and Potenzone, as the parties recognize in their arguments.

In Proformance, we held that the "public policy" of compensating accident victims, which underlies N.J.S.A. 39:6B-1(a), precluded enforcing a provision in an auto insurance policy that purported to exclude liability coverage for an owner-policyholder's permissive user who caused a vehicle collision while engaged in "business pursuits" -- an activity not covered under the policy. 185 N.J. at 409, 414-20. Having struck that provision, the Court next addressed whether the policy's stated limit of $100,000 should apply or whether the policy should be reformed to the compulsory statutory minimum of $15,000. See id. at 420-21. The Court held that the policy should be reformed to $15,000, reasoning, "[t]he business pursuits exclusion is contrary to public policy to the extent that it denies to an injured third party the minimum coverage required by law." Id. at 421.

In Potenzone, the Court reached the opposite conclusion, reforming an offending business auto insurance policy to the stated policy limit rather than the statutory minimum. See 191 N.J. at 149, 152-56. The offending provision

22

at issue in Potenzone excluded liability coverage for workplace injuries that occurred "while moving property to or from a covered auto" -- an exclusion the insurer conceded was not enforceable under case law mandating coverage for "loading and unloading accident[s]." Id. at 154 (citing Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., 119 N.J. 402, 413 (1990)). Therefore, "[t]he sole issue on appeal was whether [the insurer's] insurance coverage should be limited to the statutory minimum or extended to the face amount of its insurance policy." Id. at 150.

We held that the policy should be enforced to its stated limit of $500,000, id. at 154-56, and distinguished Proformance on the basis that the offending business-pursuits clause was an "otherwise valid business exclusion," and "[i]t was the first time we invalidated a business exclusion of that nature." Id. at 155 (citing 185 N.J. at 410, 420-21). In contrast, in Potenzone, the offending provision violated Ryder, which had been decided sixteen years earlier. Id. at 154-56. Ryder held "that the obligation to provide coverage in a 'loading and unloading' accident arises from statute and therefore cannot be limited by contract," 119 N.J. at 407, and that "an insurer would be required to provide coverage in a 'loading and unloading' accident to the limits of its policy -- often an amount greater than the statutory minimum," id. at 413.

23

We concluded in Potenzone that, given Ryder's holding, insurers "should have reasonably expected that the full policy limit for an accident during a loading or unloading operation was required." 191 N.J. at 155. Because "the insurance industry . . . had ample time to adjust its rates and policy terms" but failed to do so, the Court imposed the full policy limit. Id. at 155-56.

B.

Analyzing this matter under the Proformance/Potenzone dichotomy, which requires consideration of whether case law provided sufficient notice to an insurer that its policy provision was unlawful, see 185 N.J. at 421; 191 N.J. at 155-56, it is difficult to conclude that Federal had sufficient notice to warrant imposing the full policy limit. Some confusion must be conceded, in light of the arguably diverging decisions in Rao and Aubrey, even though Aubrey cites Rao approvingly. Ultimately, we find this case to be closer to Proformance, which reformed the policy to meet minimums set by law, 185 N.J. at 421, than Potenzone, which imposed the full policy limit, 191 N.J. at 155-56.

Rao, decided by the Appellate Division in 1988, provided notice of Paragraph 3(a)(2)(d)'s illegality when that case invalidated a similar policy exclusion that also "attempt[ed] to preclude coverage entirely because of

24

. . . other [personal] coverage secured by the [permissive users]." Rao, 228 N.J. Super. at 404.  Aubrey, in reaching its holding on UIM coverage, construed a liability exclusion nearly identical to Paragraph 3(a)(2)(d) to be a valid step-down clause, notwithstanding that the provision would have rendered a permissive user "not covered" because her personal coverage met the statutory minimum.  140 N.J. at 406.

Although Aubrey arose in the context of first-person coverage under UIM, given Aubrey's arguably contrary reading of a similar provision as a step-down provision, we are persuaded that the step-down-provision-versus-escape-clause issue was not fully settled.  We cannot say that Federal should have "reasonably expected" that its provision would be found to be unlawful and that it would therefore be held to the full limit of its coverage.  Instead, we hold that Federal must comply with the applicable compulsory minimum liability coverage, which is the minimum liability coverage required by the Chief Administrator of the MVC for all vehicles owned or used by a dealership as its policy purported to fulfill as a condition of the dealership's licensure: $100,000/$250,000 in bodily injury, in pertinent part.  Of course, our decision today puts issuers of garage policies on notice that similar escape clauses are unlawful.

Accordingly, we affirm the reformation of the policy but modify the trial court's imposition of the $1,000,000 policy amount and instead order the reformation of Federal's policy to the $100,000/$250,000 dealer-licensure minimum liability coverage required by N.J.A.C. 13:21-15.2(*l*).[4]

## V.

The judgment of the trial court is affirmed as modified.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.

---

[4] To be clear, the $100,000 in coverage available under the Federal policy is in addition to the $15,000 made available under Aquilar's personal policy. See supra at ___ (slip op. at 20-21).